DONAT J. GRENIER, ADMINISTRATOR (ESTATE OF EDWARD GRENIER) *vs.* TOWN OF GLASTONBURY.

MALTBIE, C. J., HAINES, HINMAN, BANKS AND AVERY, Js.

Argued  May  2d—decided  June  5th,  1934.

*Henry  H.  Hunt,* with  whom,  on  the  brief,  was *Norman  Yellin,* for  the  appellant  (defendant).

*Hugh  M.  Alcorn,* with  whom  was  *Morris  G.  Beizer,* and,  on  the  brief,  *Simon  J.  Beizer,* for  the  appellee (plaintiff).

AVERY, J.  This  action  was  brought  under  General Statutes,  § 1420,  to  recover  damages  for  the  death  of the  plaintiff's  decedent,  alleged  to  have  been  caused by  a  defective  bridge  which  the  defendant  town  was bound  to  keep  in  repair.  From  a  judgment  for  the plaintiff,  the  defendant  has  appealed,  and  the  only

question presented is whether or not the trial court erred in finding and concluding that the plaintiff's decedent was free from negligence contributing, as a substantial factor, to cause his death.

The essential facts found by the trial court are as follows: On Sunday, May 21st, 1933, the plaintiff's decedent, Edward Grenier, a minor fourteen years and eleven months of age and living with his parents in Hartford, went with three other boys, varying in ages from eighteen to twenty years, upon a fishing party to Glastonbury. Three, including plaintiff's decedent, rode their bicycles from Hartford to East Hartford where they met the fourth and all proceeded on the highway to Glastonbury. The plaintiff's decedent had owned the bicycle for only four days. He had obtained it from a boy who lived next door, and had ridden it at times before owning it. He was a fairly good rider and had ridden other bicycles, more or less.

There was a highway in the defendant town known as Keney Point Road, a part of which consisted of a bridge crossing Keney Cove, a stream running into the Connecticut River. The bridge is twenty-four feet across the water from east to west and substantially sixteen feet wide from north to south, composed of planks sixteen feet long laid from north to south. There was a four by six inch stringer on each side laid twelve inches in from the outer edge and running the full length of the bridge. There was a strong current of water flowing southerly under it due to the spring freshet and the ebb and flow of the tide. The depth of the water varied, being five feet deep immediately south of the center and, at a point ten feet south thereof, seven feet. The bridge was rebuilt five or six years before the accident and equipped for a substantial railing. A removable railing had been constructed which was taken away in the fall of 1932, and had not been

replaced prior to the accident. The defendant conceded at the trial that if there had been a proper railing, it would have stopped the boy from going over into the water. When the boys arrived at Keney Cove, they parked their bicycles about thirty feet east of the bridge, arranged their fishing tackle and proceeded to fish at various places around and near it. Plaintiff's decedent first fished on the east side, then, with one of his companions, crossed and began fishing on the west bank. About ten or fifteen minutes thereafter, he proceeded to the point where they had parked their bicycles and came back with his onto the bridge, where he stopped with one foot resting thereon and the other leg thrown over his bicycle. He was about two feet in from the stringer on the north side and in about the center line of the bridge. He then started to ride upon the bridge and on the second or third turn came in contact with the stringer on the southerly side, and was thrown or fell into the water and drowned. The floor of the bridge was dry, in good condition and safe for public travel.

Upon these facts, the court concluded that the absence of a railing was the proximate cause of the death of the plaintiff's decedent; that he was using the bridge in a manner naturally to be expected of a boy of his years, judgment and experience; and that the danger of striking the stringer and being caused to fall into the water would not have been appreciated by such a boy, and hence he was not guilty of contributory negligence.

The action in the present case is not one of negligence but one founded on a statute, and the defect alleged must be the sole and essential cause of the injury complained of to warrant recovery. If the negligence of plaintiff's intestate or of a third party is also a proximate cause, the plaintiff has no right of

action and cannot recover. *Gustafson* v. *Meriden,* 103 Conn. 598, 604, 131 Atl. 437; *Bartram* v. *Sharon,* 71 Conn. 686, 692, 43 Atl. 143. In determining whether the plaintiff's decedent was free from negligence which was the proximate cause of his death, his conduct is not to be measured by the same standard as that of a matured person but by such judgment and experience as boys of similar age, experience and judgment would use under the circumstances. *DiMaio* v. *Yolen Bottling Works,* 93 Conn. 597, 600, 107 Atl. 497; *Rohloff* v. *Fair Haven & W. R. Co.,* 76 Conn. 689, 693, 58 Atl. 5. Knowledge of the boy is one consideration in ascertaining whether he has been guilty of contributory negligence but it is not a controlling element. "The judgment of the boy—that is, his discretion to heed and his power of self-control—is the predominant element." *Lederer* v. *Connecticut Co.,* 95 Conn. 520, 526, 111 Atl. 785; *Brennan* v. *Fair Haven & W. R. Co.,* 45 Conn. 284, 298; *Birge* v. *Gardner,* 19 Conn. 507, 512.

In *Neal* v. *Gillett,* 23 Conn. 437, which was an action for negligence in which two of the defendants were thirteen years and one sixteen years old, the court, a majority concurring, declining to enter into the question whether the same rule would be applied to infant defendants as would be if they were plaintiffs and the issue was one of their contributory negligence, said (p. 442): "The youngest of these defendants was thirteen years of age, and in the absence of all proof to the contrary, must be presumed to have been emancipated from the dominion of mere 'childish instincts;' and we think it would be mischievous to hold that persons of the age of thirteen years are, on account of their youth alone, absolved from the obligation to exercise their rights with ordinary care. It may not be easy to fix upon the exact age when 'childish instinct,' and thoughtlessness, shall cease to be an excuse for con-

duct, which in an adult would be considered, and treated, as a want of ordinary care, but it is sufficient for the determination of this point, that these defendants had clearly passed that age." To place at thirteen the age at which a minor shall be deemed to be subject to the same duty as an adult as regards his claimed negligence, adopts an age lower than we find in any other authority.

In certain decisions it is laid down that, at the age of fourteen years a plaintiff is presumed to be capable of using the care of an adult. *Tucker* v. *New York Central & H. R. R. Co.*, 124 N. Y. 308, 318, 26 N. E. 916; *Nagle* v. *Allegheny Valley R. Co.*, 88 Pa. St. 35. These opinions adopt the analogy of the age at which a minor is conclusively deemed capable of committing crime, an analogy which does not seem to us particularly apt, especially in contrast to the fact that in civil matters a person is not deemed to be *sui juris* until he reaches the age of twenty-one years. Indeed, it is impossible to fix with precision the age at which any minor is to be treated as capable of using the judgment of a reasonably prudent adult, as this must depend both upon the state of maturity which the particular child has reached and upon the nature of the risk involved. Amer. Law Institute Restatement, Torts (Tent. Draft No. 4) § 167. Thus, in *Nelson* v. *Branford L. & W. Co.*, 75 Conn. 548, 552, 54 Atl. 303, where the plaintiff, sixteen years old, was killed by grasping a heavily charged electric wire, we said: "A boy of his age is not necessarily chargeable with knowledge of the different modes of insulation and their comparative effect. That he had knowledge that the casing contained a wire, and that an electric light wire, did not, as a matter of law or logical necessity, show that he was not in the exercise of due care, under the circumstances of his situation. It was to be and was con-

sidered by the trial court; but it was not absolutely controlling."

In a very illuminating decision, the New Hampshire Supreme Court, speaking by Snow, J., has said: "It is a matter of common knowledge that physical and mental maturity is attained by a gradual but generally progressive process of growth from birth, and that the stage at which it is reached varies with the individual. As the factors making for this variation are not alone congenital but result from teaching and experience, it follows that the age at which maturity is in fact reached cannot be determined with mathematical accuracy. The necessities of society, however, require that some age should be considered as prima facie evidence of maturity. The age of twenty-one, which has been accepted by common consent as the basis for the enfranchisement of infants, as fixing their capacity to make contracts and for other purposes, is allowed to mark the supposed border line between immaturity and maturity. This limit is, however, but an approximation of the truth when applied to the individual. This fact must necessarily be recognized in applying the rule of reasonable conduct to infants. If an infant of seventeen years of age, by reason of natural or artificial causes, has acquired the capacity for observation, reasoning and action of the average prudent adult, this circumstance places him on a parity with the latter. Likewise if his development has progressed only to the stage of the average fourteen year old boy, that circumstance bears on what should be deemed to be reasonable conduct on his part. In other words, the fundamental rule of reasonable conduct remains constant, but the circumstances of the age and stage of development of the individual in the process of his growth during his minority are important considerations in applying the rule." *Charbonneau* v. *MacRury,*

84 N. H. 501, 511, 153 Atl. 457. We cannot find error in the application to the plaintiff's intestate by the trial court of the rule of care ordinarily used in defining the duty of children who, as plaintiffs, are under the burden of proving freedom from contributory negligence, and in so far as this conflicts with the decision in *Neal* v. *Gillett, supra,* that case must be overruled.

The plaintiff's decedent in the present case was a talented singer and had also earned money by selling papers. He was, however, in the eighth grade of the public schools. He had the bicycle but four days and the question of whether or not he used the care of a boy of similar age, experience and judgment under the circumstances was peculiarly one for the trial court, and its finding is final so far as the facts involved in the present case are concerned. *Kishalaski* v. *Sullivan,* 94 Conn. 196, 199, 108 Atl. 538; *Nolan* v. *New York, N. H. & H. R. Co.,* 53 Conn. 461, 469, 4 Atl. 106.

There is no error.

In this opinion the other judges concurred.