JOSEPH MAGARACI *v.* MARY SANTA MARIE.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued June 3—decided July 22, 1943.

*Walter E. Monagan,* for the appellant (defendant).

*Michael V. Blansfield,* with whom was *Irving W. Pasternak,* for the appellee (plaintiff).

ELLS, J. The plaintiff brought this negligence action in 1940 to "the Court of Common Pleas, at Waterbury, for the Judicial District of Waterbury," claiming $15,000 damages. At that time the court had "concurrent jurisdiction with the superior court of all civil actions in which equitable relief only shall be demanded and of appeals from assessments of benefits or damages made by the city of Waterbury or by the borough of Naugatuck, and shall have jurisdiction of all other civil actions wherein the matter in demand shall exceed one hundred dollars, provided the parties or either of them reside within the limits of the judicial district of Waterbury." General Statutes, § 5440.

The case was tried in May, 1942, and judgment was entered upon a verdict for $12,500. At that time there had been a change in the statutes, and the general jurisdiction of the new Court of Common Pleas was limited to a maximum of $2500, but it was provided that the new court "shall retain final jurisdiction of all cases . . . made returnable to the several courts of common pleas throughout the state under statutes existing prior to July 1, 1941." General Statutes, Sup. 1941, § 812f. The defendant appealed to this court and has filed a plea to the jurisdiction alleging that the lower court at no time had jurisdiction of the case and that the judgment is void and of no effect.

We have, since the filing of the plea, sustained the authority and status of the Court of Common Pleas as created by the act of 1941. *Walkinshaw* v. *O'Brien,* 130 Conn. 122, 32 Atl. (2d) 547. Therefore it was a duly constituted court which entered judgment for $12,500; and by virtue of § 812f it retained the jurisdiction it had over this action at the time it was returned.

There remains the question whether § 5440 is unconstitutional because it created a court, operating within

a limited area, which was not inferior to the Superior Court. Our decision in *Walkinshaw* v. *O'Brien*, supra, disposes of the defendant's contention. The statute evidently distinguished between "civil actions" and administrative appeals by its express mention of certain of the latter. For example, appeals in administrative matters not mentioned, such as those from compensation commissioners, the liquor control commission and zoning boards, and unemployment compensation appeals, still had to be taken to the Superior Court. There were other limitations. One was that one party must reside within the district, which eliminated jurisdiction in those cases where "neither of them is an inhabitant of this state." General Statutes, § 5444. Another was that, by judicial construction, its jurisdiction did not include actions "wherein the title to land is to be tried," if the land lay outside the district; *Martin* v. *South Norwalk Savings Bank*, 72 Conn. 698, 46 Atl. 152; whereas the requirement for such actions in the Superior Court in the county where the land lies (General Statutes, § 5444) goes merely to venue, as there is but one Superior Court throughout the state. *Fine* v. *Wencke*, 117 Conn. 683, 684, 169 Atl. 58. In one case the Superior Court sitting in Waterbury could try title to lands in Hartford County, if the parties waived any question of venue; in the other, the Court of Common Pleas could not, because jurisdiction of the subject matter cannot be conferred by consent. Cf. Conn. App. Proc., §§ 31, 32.

Approaching the problem from another angle, under § 5441 equitable relief against causes pending or judgments rendered in the Superior Court can be brought only in that court; the Court of Common Pleas at Waterbury could not entertain such an action; *Cronan* v. *Mersick*, 80 Conn. 593, 595, 69 Atl. 938; but the Superior Court could entertain one as regards an

action in that Common Pleas Court. The Superior Court could grant a writ of prohibition as regards the Common Pleas Court, § 5917; or a writ of mandamus against one of its judges. *Ansonia* v. *Studley*, 67 Conn. 170, 176, 34 Atl. 1030; see *Walkinshaw* v. *O'Brien,* supra, 131, 132.

Appeals from the Probate Courts for the districts lying within the territorial limits of the judicial district of Waterbury could be taken only to the Superior Court in the county where such Court of Probate was held. General Statutes, § 4990; so also as to appeals from doings of commissioners, § 4993, and commissioners on insolvent estates, § 4920. The criminal jurisdiction of the court was drastically limited. General Statutes, § 6419. It only heard cases upon appeal from justice and police courts.

This compilation does not exhaust the differences in the jurisdiction of the two courts, nor the restrictions which our statutes placed upon the jurisdiction of the Waterbury court. Putting together limitations upon the powers of the latter court, as compared with the powers of the Superior Court, we conclude that the legislature did not exceed its power in creating the Waterbury court as it existed at the time this action was brought.

We have not overlooked the fact that we said in the *Walkinshaw* case, supra, 141, that the legislature could not create a court with jurisdiction equal to that of the Superior Court, even in a portion of the state. The statement does not apply to the present situation because the Waterbury court did not have jurisdiction at all equal to that of the Superior Court. The plea to the jurisdiction is not well grounded.

This action was brought in behalf of a twelve-year-old boy who picked up a dynamite cap lying in the driveway of the defendant's premises, took it home,

stuck a pin into it and had a part of his hand blown off when it exploded. The jury brought in a verdict for $12,500, and the defendant appealed from the denial of her motion to set it aside as against the evidence, and as excessive, and also from the judgment, assigning error in the charge.

There was evidence from which the jury could reasonably have found that the defendant owned a two-family house, and lived on the first floor with her husband and her three children. The house faced the highway and was about fifteen feet from it. Two one-car garages were built into the house, on the ground level, and driveways from each garage led to the highway. The defendant and her husband occupied one of these garages, and back of it, accessible only through the garage, was a small cellar. During the first few months of 1940 the husband, a contractor, had occasion to use dynamite and dynamite caps in an excavating job, and with the defendant's knowledge and permission he stored what were left over from day to day in this back room. The defendant kept the garage doors locked, and told the second-floor tenant to keep the children away from them, because her husband had explosives in the cellar. Just prior to the boy's injury, the defendant and her husband were engaged in moving their belongings to a new house. In the course of moving them, the husband backed his truck to the garage door and loaded and took away the contents of the cellar which included some of his tools. This was done on the instruction and under the direction of the defendant. In moving the articles he dropped a dynamite cap on the driveway. Within a day or two thereafter the boy came upon the premises, as an invitee, to tell his sister, who was visiting the second-floor tenant, to come home to dinner. He stopped at a point about three feet from the door of

the garage occupied by the defendant, called to his sister, and while waiting for her, saw on the driveway a small metal cylinder, picked it up and carried it home, using it as a whistle by blowing into it. He took it into the pantry and stuck a pin into it. It was in fact a dynamite cap, and was filled with a very sensitive and powerful explosive. The greater part of his hand was blown off. The neighborhood of the defendant's premises was well populated, many children lived there, and the defendant knew that they were accustomed to play on her premises.

There was no direct testimony that the defendant actually knew that there was any dynamite or caps in the cellar at the time of the moving, and the husband testified that there were none there at that time. Upon hearing of the boy's injury, however, he immediately went to the driveway, at the defendant's direction, "too look around to see if there was any more around the garage, because there was children around." There was testimony that the defendant herself said that "she was going to have her husband look to see if there was any more around." The evidence is sufficient to support a reasonable inference that the husband dropped the dynamite cap, that it had been stored in the cellar, that the defendant knew that he stored such caps there at the time she directed him to move the contents of the room, and that he was acting as her agent and at her direction at the time he carelessly dropped it. In *Mathews* v. *Livingston*, 86 Conn. 263, 269, 85 Atl. 529, we approved of an instruction "that if, in what was done, the husband acted alone and independently of his wife, he alone would be liable, but that if she acted alone, or if he acted as her agent, or if she knew and acquiesced in his acts without objection, she would be liable, and that if both acted in concert each would be liable." There can be

no doubt that the conduct of the husband in dropping such a highly dangerous article onto these premises, under the circumstances disclosed by the evidence, could be found to be negligence. There having been evidence upon which the jury could have reasonably found that he was acting as the defendant's agent, and under her specific direction, in removing such an article as a detonating dynamite cap, the defendant was liable for the consequence of her husband's negligence. The dropping of the cap upon premises where she knew children were accustomed to play involved an unreasonable risk of serious bodily harm to them. The case was tried upon two claims, negligence and nuisance. No interrogatories were submitted, and the verdict was general. We therefore do not discuss the question of nuisance. *Ziman* v. *Whitley,* 110 Conn. 108, 112, 147 Atl. 370; *Lorenc* v. *Hartford Hospital,* 127 Conn. 194, 197, 15 Atl. (2d) 313. The question of contributory negligence on the part of this boy was a question of fact for the jury, and they could reasonably have concluded that he exercised such care as may reasonably be expected of children of similar age, judgment and experience. *Sherman* v. *William M. Ryan & Sons, Inc.,* 128 Conn. 182, 184, 21 Atl. (2d) 378.

We have recently considered situations somewhat similar to those of the instant case in *Murphy* v. *Ossola,* 124 Conn. 366, 371, 199 Atl. 648, and *Wolfe* v. *Rehbein,* 123 Conn. 110, 193 Atl. 608, and do not deem it necessary to restate the principles of law and the authorities there considered. Upon the evidence and reasonable inferences from it, we cannot say that the court erred in refusing to set aside the verdict. Furthermore, the jury could reasonably have found that the defendant, through her husband as her agent, violated General Statutes, Cum. Sup. 1935, § 1008c,

subsection (c), which requires those having custody and possession of detonating caps for explosives to keep them under personal observation or securely locked up; that she was negligent; and that her negligence was a proximate cause of the injury. *Murphy* v. *Ossola,* supra, 376.

The boy permanently lost the use of 80 per cent of his left hand. While the verdict was a large one, we cannot overrule the conclusion of the trial court that it was not excessive.

Insofar as the defendant's claims of error in the charge concern the issue of nuisance, there is no occasion to consider them for the reason we have pointed out. Those which concern the issue of agency were all based on claims, not that the court stated the law incorrectly, but that there was not sufficient evidence before the jury to warrant the court in charging upon specified points. There was evidence which fairly justified the court in charging as it did. One of the assignments raises the question whether the fact that the boy was not injured on the defendant's premises precludes him from recovery. There is no such distinction. See *Burbee* v. *McFarland,* 114 Conn. 56, 60, 157 Atl. 538. There is no reversible error in the instructions complained of.

There is no error. The plea to the jurisdiction is overruled.

In this opinion the other judges concurred.