PHILIP V. WAGNER, JR., a minor, by Philip V. Wagner, his next friend, Plaintiff Below-Appellant, v. DAVID C. SHANKS, a minor, and JOHN A. SHANKS, Defendants Below-Appellees.

(*September* 12, 1963.)

TERRY, C. J., and WOLCOTT and CAREY, J. J., sitting.

*Alexander L. Nichols* and *Richard H. Allen* (of Morris, Nichols, Arsht and Tunnell) for appellant.

*H. James Conaway, Jr.* (of Morford, Young and Conaway) for appellees.

Supreme Court of the State of Delaware.

TERRY, Chief Justice.

This is a tort action filed on behalf of a minor by his father. Plaintiff-appellant, Philip V. Wagner, Jr., sustained serious injuries on February 7, 1957, resulting from an automobile accident. At the time of the accident, the car was being driven by David C. Shanks, a minor who, with his father, was a defendant in the action brought in the Court below. The automobile was owned by John A. Shanks, David's father.

On the evening of February 7, 1957, Philip V. Wagner, Jr., hereinafter referred to as "Philip," and David C. Shanks, hereinafter referred to as "David," were alone in the automobile. The only version of the events which culminated in disaster is that supplied by David. Philip has no recollection of what transpired.

David testified that he and Philip attended a play rehearsal at their school on the evening in question. He stopped for Philip at Philip's house in his family's Oldsmobile sedan. The play rehearsal was concluded around 10 o'clock in the evening. David and Philip had previously determined to look for cars which were parked along the route home, with the idea of exciting the occupants by turning a flashlight on them. These boys and some of their friends had done this on similar occasions. David testified that Philip brought a flashlight with him for this purpose. Such activities were known to David's parents and were not forbidden, but were not known to Philip's parents.

No cars were found by the boys on the trip back at approximately 10 o'clock that evening. Philip evidently encouraged David to seek a more lonely area, and after some hesitation by David, they agreed to travel out Barley Mill Road, passing Philip's house along the way. It is a narrow, blacktop, two-lane road, 20 to 21 feet wide, forming a crown at the center and tapering away at the edges, with no improvement at the shoulders. The road is closely abutted on both sides by fences, poles, and trees. It has numerous curves and rises and falls in contour. The area traveled by Philip and David shortly before the accident contains a straightaway section over a small rise, which then climbs in a steady uphill grade to a sharp curve which bears to the left. It was at this point in the road that the accident occurred.

After deciding to continue the search, the boys passed the dam at Hoopes Reservoir. David then turned his car around in the direction of home. As he again passed the side road leading to the dam, he observed a car parked somewhat off Barley Mill Road, but facing Barley Mill Road. David stopped his car along side of the parked car. According to David's testimony, Philip, who was in the

front passenger seat of David's car, leaned over the back and flashed the light on the other car, and, at the same time, one of the boys called to the occupants to "move on," or some similar expression. There were two occupants in the other car. The driver immediately flashed on the headlights and started the engine. At this point, David became excited and sped away from the scene at a high rate of speed. The other car continued to follow the boys, but its identity and that of the occupants are still unknown.

It had been raining or misting throughout the day. While the precipitation had ceased at the time of the accident, the surface of the road was still wet and traction was poor. The atmosphere was overcast and visibility was obscured by intermittent fog conditions.

Shortly thereafter, the automobile collided with a tree stump which was along the edge of Barley Mill Road at the point of a sharp left curve. Evidence adduced at trial indicates that David had lost control of the car and skidded for approximately 140 feet before coming to rest 10 feet off the road.

As a result of the injury, plaintiff was required to repeat his senior year of high school, and medical evidence was presented at the trial which indicated that his mental powers of recollection and orientation are permanently impaired. He has been unsuccessful at any further educational pursuits.

This action was subsequently filed on behalf of Philip to recover damages for personal injuries and for medical expenses. Two counts were alleged in the complaint. The first is that David was conveying Philip in his automobile based on "payment," thus removing the case from the stricter requirements of the Delaware guest statute. (21

*Del. C.* § 6101(a).) On this count, plaintiff charged defendants with ordinary negligence. The second count charges "wanton disregard of the rights of others," in order to obtain a recovery notwithstanding the guest statute.

Defendant filed a motion for summary judgment relating to the first count, stating that plaintiff was a guest of defendant without payment for transportation. This motion also sought to attack the second count of the complaint, but that was denied by the Court below. However, defendant's motion for summary judgment based on the first count was granted.

■ The pertinent facts relating to the issue of "payment" can be briefly stated. David's parents own two automobiles, one of which was used quite regularly by him to transport Philip to and from school and to other school activities. Affidavits presented on this issue indicated that perhaps out of some sense of obligation, Philip's parents drove David's father home from the bus line in the evening. While no payments, as such, were made for any transportation supplied by either party to the other, it does appear nonetheless that some form of reciprocal arrangement existed. That, however, is not the basic issue which was considered determinative by the Court below in granting defendant's motion for summary judgment. The undisputed facts show that these boys were on a frolic. It was unnecessary for the Court below to have determined the validity of any such arrangement, since the boys did not return home after their extra-curricular activities had been completed at the school. In his decision, the learned Judge stated:

"If a business agreement had existed, it ceased when Philip and David decided not to go home, but decided instead to continue looking for parked cars. Such a ride

was certainly not within the scope of any transportation agreement between the parties. Assuming, without determining, that a valid contract existed between the parties, I decide that at the time the accident occurred on February 7, 1957, Philip Wagner, Jr. and David Shanks were not operating under the terms of any such contract and that the trip had become purely social in nature. Consequently, Philip was not a 'paying passenger' but a 'guest.' "

We conclude that the Court below was correct. It was unnecessary to decide if a valid contract existed, because its provisions would not, in our opinion, apply to the activities of either party at the time of this accident.

Defendant has moved to dismiss plaintiff's appeal on this issue. After the defendant prevailed on the first count of his motion for summary judgment, no appeal was taken by the plaintiff until now. Article 4, Section 11, of the Constitution of Delaware, *Del. C.*, provides that part of our jurisdiction is:

"(1) (a) To receive appeals from the Superior Court in civil causes and to determine finally all matters of appeal in the interlocutory or final judgments and other proceedings of said Superior Court in civil causes * * * *."

Plaintiff's complaint alleged two distinct claims: one on the basis of "negligence"; the other, "wanton conduct" by the defendant David. The negligence allegation was against both David and his father, while the latter was solely against David.

Defendant argues that the order on the negligence count was a final judgment of the Superior Court insofar as Mr. Shanks is concerned. The argument is further advanced that as a final judgment, an appeal should have

been taken within 60 days after the entry of the judgment under the provisions of 10 *Del. C.* § 148. The statute provides:

"No appeal from a final judgment of the Superior Court in a civil action shall be received or entertained in the Supreme Court, unless the praecipe or notice of appeal is duly filed in the office of the clerk thereof within 60 days after the entry of such judgment. *   *   *"

Plaintiff argues that under Rule 54(b) of the Superior Court, *Del. C.,* which corresponds with the amended Federal Rule, the judgment of the Court below did not become final until all issues of the case were resolved. That rule states:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all of the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all of the claims."

Defendant argues that this rule impinges upon the broader constitutional authority of the Court to receive appeals on interlocutory matters. We recognize that Article 4, Section 11, of the Constitution provides a broader basis upon which decisions of the Superior Court can be reviewed. That constitutional provision, however, is not an open door to this Court on every interlocutory mat-

ter. Substantial rights must have been adjudicated and the decision of the lower Court on such matters has to be final.

The granting of a motion for summary judgment as to only one or more multiple claims, but less than all of them, is not a final judgment under Rule 54(b). 6 Moore's Federal Practice, Par. 54.40, page 260.

The rule clearly states that in multiple claims of this type, the lower Court could revise its previous determination at any time prior to final judgment on all issues presented by the motion. For that reason, the Superior Court continued to have jurisdiction over the negligence claim and could have altered its judgment at any time until the issue of wantonness was resolved by a jury and the Court entered final judgment thereon.

Under the provision of Article 4, Section 11(1)(a) of the Constitution jurisdiction is now granted to review matters in the Superior Court in the same manner as heretofore existed in the Court of Chancery. Thus, interlocutory appeals may now be taken in the Superior Court the same as in the Court of Chancery as a matter of right, provided, of course, the interlocutory judgment is appealable in the sense that it settled a legal issue in the case.

The plaintiff below could have appealed as of the time the judgment was entered against him on the first count, irrespective of whether it was interlocutory or final in nature, since it settled a legal issue in the case.

The substantive question is, therefore, was the judgment of the Court below as to plaintiff's first count interlocutory or final. If it was an interlocutory judgment, we can consider an assertion of error in that judgment on final appeal even though it was docketed more than 60

days after the entry of the interlocutory judgment. On the other hand, if the judgment on the first count was final, then the appeal comes too late.

■ Considering the provisions of Article 4, Section 11(1) (a) of our Constitution and the provisions of 10 *Del. C.* § 148, and Superior Court Rule 54(b), and in the light of the order of the judgment entered by the Court below as to the first count, we conclude that the judgment below on the first count was interlocutory in nature, and that any error therein may be included in the assignments of error under the appeal from the final judgment in the case.

The defendant's motion to dismiss the plaintiff's appeal as to Count 1 of the complaint is denied.

The second count of the complaint predicated on "wanton conduct" by the defendant proceeded to trial on the merits. The jury found for the defendant, and the plaintiff appeals.

The plaintiff contends that the Court below in disposing of the second count committed prejudicial errors which require reversal. The issues thus raised are:

(1) Whether the Court erred by excluding opinion testimony relating to a reasonable speed under all the circumstances offered by the traffic officer who investigated the accident.

(2) Whether the Court erred in charging the jury that "wanton disregard" requires proof of implied intent suggesting the necessity for evidence of hostility or malice on the part of the defendant toward the plaintiff.

(3) Whether the Court erred in submitting to the jury the question of contributory wanton disregard by the plaintiff for his own safety.

(4) Whether the Court erred in charging that a minor may be held to a less degree of care than an adult in the operation of a motor vehicle upon the highways of this State.

■ ■ The plaintiff called a State Trooper as a witness. He then attempted to qualify the Trooper as an expert witness on the subject of what constituted a reasonable and safe speed under the circumstances and conditions of the weather and roadbed at the time of the accident. We think the learned Trial Judge did not err in excluding the Trooper's testimony in this regard. We have always held that where facts are in evidence from which the jury may draw its own conclusions, it is inappropriate to present evidence from experts on such issues. This is a sound rule. It is designed to prevent litigants from invading the province of the jury by presenting experts who state conclusions of fact which the jury alone should determine. *South Atl. S. S. Co. of Del. v. Munkacsy*, 7 W.W.Harr. 580, 600, 187 A. 600; *Robelen Piano Co. v. DiFonzo*, 3 Storey 346, 169 A.2d 240.

The only exception to this rule is that it is not error for a witness to express an opinion upon facts testified to when all men are qualified to form an opinion upon them, e.g., drunkenness. *State v. Durrant*, 5 Storey 510, 188 A.2d 526.

■ The next issue raised by plaintiff concerns a position of the Court's charge to the jury with regard to "wanton conduct" of the defendant.

The Court stated:

"There is a clear distinction between wantonness and negligence, as the former term includes the elements of consciousness of one's conduct, realization of the probability of injury to another, and disregard of the conse-

quences. Likewise, the precisionist clearly distinguishes wilfulness from wantonness, in that the former includes the element of actual intent to cause injury, while, with respect to the latter, there is included an implied or constructive intent."

Plaintiff contends that the inclusion of the words "implied or constructive intent" in charging the jury was prejudicial error.

There are several cases in this State which have dealt with the subject of "wanton conduct." The Court below evidently based its charge on the case of *Gallegher v. Davis*, 7 W.W.Harr. 380, 183 A. 620 (Superior Court). However, in the companion case of *Law v. Gallegher*, 9 W.W. Harr. 189, 197 A. 479, this Court stated:

"Wanton conduct, resulting in injury to another, therefore, may be said to be such conduct as exhibits a conscious indifference to consequences in circumstances where probability of harm to another within the circumference of the conduct is reasonably apparent, *although harm to such other is not intended.*" (Emphasis added.)

We therefore hold that the definition of "wantonness" contained in *Law v. Gallegher*, supra, is the appropriate language which should have been employed by the Court below in charging the jury. We thus overrule *Gallegher v. Davis*, supra, if it suggests that an implied or constructive intent is a necessary element of wantonness. Wantonness does not necessarily imply any form of intent to cause the harm which results from some activity. Wanton conduct occurs when a person, with no intent to cause harm, performs an act which is so unreasonable and dangerous that he either knows or should know that there is an eminent likelihood of harm which can result. It is the "I don't care attitude" discussed by this Court

in *McHugh v. Brown*, 11 Terry 154, 125 A.2d 583. We conclude that the language of the charge was prejudicial to the rights of the plaintiff.

The Court's charge to the jury on the subject of the contributory wantonness of the plaintiff is also brought under attack. In its charge, the lower Court instructed the jury that the plaintiff was barred from recovering if it found that he was guilty of a wanton disregard for his own safety which proximately caused his injuries. This charge was evidently based upon the "Restatement of the Law of Torts," Volume II, Section 482.

Restatement of Torts, Sec. 482, provides:

"Reckless Conduct"

"(1) Except as stated in Subsection (2), a plaintiff's contributory negligence does not bar recovery for harm caused by the defendant's reckless disregard for the plaintiff's safety.

"(2) A plaintiff is barred from recovery for harm caused by the defendant's reckless disregard for the plaintiff's safety if, knowing of the defendant's reckless misconduct and the danger involved to him therein, the plaintiff recklessly exposes himself thereto."

The comment to this section states in part:

"* * * In order that the plaintiff's conduct may bar him from recovery, it is necessary that he not only know of defendant's reckless conduct but also realizes the gravity of the risk involved therein so that he is not only unreasonable but reckless in exposing himself to it."

It is quite clear from the above-cited provisions of the Restatement of Torts that contributory negligence by the plaintiff is not sufficient to bar a recovery from a defendant who is guilty of reckless conduct. In the case at

bar there is no evidence that Philip encouraged David to drive as he did or to direct him along the dangerous route which he took. There is not even any evidence to indicate whether Philip remonstrated with David as to his method of driving the automobile. The question thus arises whether the failure of a passenger to request the driver to alter his reckless course of conduct is sufficient to raise the issue of contributory wantonness on the part of the plaintiff.

It must be first observed that Philip is cloaked with the presumption that he exercised due care for his own safety. In order to rebut that presumption, it is necessary to show that he did not take reasonable precautions to protect himself from a dangerous situation. However, a failure to exercise reasonable care on the part of a plaintiff is nothing more than contributory negligence. We have already indicated that this is no defense to defendant's reckless conduct. Under the specific circumstances of this case, we consider that Philip's failure, if in fact that is the case, to request David to drive more carefully is nothing more than contributory negligence. Hence, there is not sufficient evidence in this record to warrant an instruction by the trial court on the issue of contributory wantonness.

The case at bar must be distinguished from those wherein there is a joint venture on the part of an automobile driver and his passenger to engage in specific acts of reckless driving, i. e., "joy riding" or "drag racing," to cite only two examples.

We believe that this case presents a factual situation which requires that certain refinements of the law of reckless conduct, as stated in Section 482 of the Restatement, should be enunciated.

Particularly in the area of misconduct involving the operation of a motor vehicle, a passenger can find him-

self in a most unfortunate predicament. Not every passenger in an automobile which is being operated improperly is per se guilty of reckless misconduct merely because he has exposed himself to such danger. Limiting ourselves solely to the facts at hand, we believe that the provisions of Subsection (2) in the Restatement of Torts, Section 482, supra, are applicable only to the plaintiff who knows of the danger, recklessly exposes himself to it, and further, can reasonably extricate himself therefrom.

Thus, to be guilty of contributory wantonness, a plaintiff must do some overt act such as encouraging the driver, directing his course of action, etc. Mere silence on his part is not enough. Once again, this is not to be confused with those cases where a driver and his passenger embark upon acts of reckless driving with the specific knowledge beforehand that such reckless acts will occur, which, as pointed out before, would include "drag racing" or "joy riding."

The evidence contained in the record of this case shows that the immediate or efficient cause of the accident was not Philip's act of shining the flashlight on a parked car but David's method of driving.

We conclude that the Court's charge in this respect was improper.

We now turn to the final assignment of error, wherein the lower Court charged the jury in part:

"When a minor is charged with 'wanton misconduct' he ordinarily cannot be charged in the same light or by the same standard of care as an adult."

We have carefully analyzed this issue and the authorities cited by both counsel in support of their respective positions. The Delaware statute, which permits the licensing of minors, does not provide two standards

of care for the licensing of minors and adults. The Delaware act was passed for the protection of the general public and users of the streets and highways and not for the protection of immature, inexperienced and negligent drivers. Such being the policy, implicit in the law, we think it only logical to judge the behavior of minors in a case such as this by the same standard as that of an adult, and we see no reason for a different rule where the question is not one of ordinary negligence but involves reckless driving or wanton conduct.

We consider it to be a matter of paramount public policy, in fact a rule of necessity, that society in general be assured that all drivers of motor vehicles upon our highways be charged with equal responsibility in the operation of motor vehicles regardless of age, or any other physical or mental disparity which may exist. *Dellwo v. Pearson*, 259 Minn. 452, 107 N.W.2d 859; *Neilsen v. Brown*, Or. 374 P.2d 896; *Wilson v. Shumate*, Mo., 296 S.W.2d 72; *Harrelson v. Whitehead*, 236 Ark. 325, 365 S.W.2d 868; *Allen v. Ellis*, 191 Kan. 311, 380 P.2d 408. To the contrary, see *Charbonneau v. MacRury*, 84 N.H. 501, 153 A. 457, 73 A.L.R. 1266; *Overlock v. Ruedemann*, 147 Conn. 649, 165 A.2d 335; *Chernotik v. Schrank*, 76 S.D. 374, 79 N.W.2d 4.

Thus, when operating a motor vehicle upon the highways of this State, a minor will be held to the same standard of care not only with regard to his responsibilities toward pedestrians and other motorists and their passengers, but, also, within the purview of the guest statute, he must accord his own passengers the same diligence and protection which is required of an adult motorist under similar circumstances. We conclude, therefore, that the instruction as indicated above with regard

to the standard of care to be exercised by a minor in a case such as this was prejudicial to the plaintiff and erroneous as a matter of law.

For the reasons assigned, we are of the opinion that the plaintiff is entitled to a new trial on the second count. The judgment of the Court below is therefore affirmed as to the first count and reversed as to the second count. The cause will be remanded for a new trial on the second count.