LELIA CONLON ET AL. *v.* G. FOX AND COMPANY ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued May 4—decided June 5, 1973

*Patrick J. Flaherty,* for the appellants (defendants).

*Herbert Watstein,* for the appellees (plaintiffs).

MacDonald, J.   In this appeal from a judgment awarding damages to the plaintiffs Lelia Conlon and her husband for injuries claimed to have resulted from the negligent application of a permanent wave to Mrs. Conlon's hair, the principal issues raised for our consideration relate to (1) the applicability of the doctrine of res ipsa loquitur and (2) the sufficiency of the evidence of causation to support the verdict.

The first issue is raised by the defendants' attack on the court's inclusion in its charge of references to the doctrine of res ipsa loquitur which the defendants claim was inapplicable by reason of the absence of evidence establishing the basic conditions

essential for its submission to the jury. Claims of error addressed to the charge are to be tested by the claims of proof as they appear in the finding. Practice Book § 635; *DePaola* v. *Seamour,* 163 Conn. 246, 249, 303 A.2d 737; *Intelisano* v. *Greenwell,* 155 Conn. 436, 444, 232 A.2d 490.

At the trial, the plaintiffs offered evidence to prove and claimed to have proved the following facts: On March 16, 1968, the named plaintiff, hereinafter called the plaintiff, by appointment, was given a permanent wave at the defendants' beauty salon. Carl Calcasola, who substituted for the operator with whom the plaintiff had originally made her appointment, after examining the plaintiff's hair and scalp and washing and cutting her hair, gave her a permanent wave as described in the finding in considerable detail. Inasmuch as the plaintiffs have conceded, both in their brief and in oral argument, that they did not prove specific acts of negligence, it is sufficient to recite that in this procedure Calcasola put a band over the plaintiff's neck and ears and twice applied a permanent wave solution to her hair, once before and once after rollers were put on. Some time later, he took the plaintiff to a sink, washed her hair, rinsed it several times and put a neutralizer on it before removing the rollers. Immediately before giving the permanent wave, Calcasola's examination of the plaintiff disclosed no evidence of hair coloring, hair loss, or head, hair or scalp abnormalities.

The plaintiff further claimed to have proved that on her way home from the beauty parlor on the date in question, her scalp and head felt hot and feverish. When she arrived home the plaintiff looked at her head in a mirror, and saw that it was very red and

"it was just like a scalp burn where you had fluid underneath a bubble." The next day, when Edward J. Zebrowski, a physician, examined the plaintiff, he found that her hair was partially burned and scraggly with blisters on the scalp containing serum which he diagnosed as typical second-degree chemical burns of the scalp. He found the top layers of the skin of the plaintiff's scalp to have been destroyed by burns and treated her with antibiotic ointment. Zebrowski's bill which was in evidence refers to "burns of scalp and posterior neck" of the plaintiff.

The plaintiff also testified that prior to March 16, 1968, she had no problems with her hair, did not have hair breakage, had never had her hair colored or dyed, had never used home permanents and had had beauty parlor permanents without any problems.

The defendants offered evidence to prove and claimed to have proved that Calcasola, a well-trained hairdresser and operator of beauty salons with over thirty years of experience in that field, had applied to the plaintiff's hair two bottles of liquid manufactured and distributed by Sue Corey, Inc., of Chicago, Illinois, one containing a permanent wave lotion and the other containing a neutralizer; that the permanent wave lotion was contained in an individual patron-sized bottle labeled at the seal: "Do not accept if this band is broken"; that the products were accompanied by the manufacturer's printed instructions and that the entire contents of the bottles were used in giving the plaintiff her permanent wave. Calcasola did not know the chemicals contained in the products. He did not do the buying for the salon but he had seen the lotion bottles

brought into the salon in packages. Although the manufacturer suggests that operators wear rubber gloves while using the permanent wave lotion, Calcasola and most other operators never wear them. The plaintiff felt that Calcasola knew what he was doing, she did not know which solution was on her hair while she was at the sink, and after the permanent her hair looked "beautiful" by her own admission. After completion of the permanent, she went home and returned to the salon three days later and exhibited blisters on her scalp and the nape of her neck which were oozing and scabbed over. On prior occasions, the plaintiff's body had broken out with a rash when she was taking lozenges for a sore throat and she had developed, when pregnant, an itch and a rash for which a physician had treated her with a salve.

It is the claim of the defendants that, on the foregoing evidence, the court erred in interjecting the doctrine of res ipsa loquitur into its charge for consideration by the jury with instructions as to the conditions which must exist before it becomes applicable. In other words, they do not attack the specific language of the court's charge on res ipsa loquitur but rather the inclusion in its charge of any reference whatsoever to the doctrine on the ground that the three conditions essential for the application of the doctrine simply did not exist in the factual circumstances presented by the evidence. " '[T]he doctrine of *res ipsa loquitur* is a rule of common sense and not a rule of law which dispenses with proof of negligence. It is a convenient formula for saying that a plaintiff may, in some cases, sustain the burden of proving that the defendant was more probably negligent than not, by showing how the accident occurred, without offering any evidence to

show why it occurred.' *Stebel* v. *Connecticut Co.,* 90 Conn. 24, 26, 96 A. 171. Where common experience has demonstrated that no injury would ordinarily result from a situation, condition or apparatus unless there was careless construction, inspection or user, and the construction, inspection and user were all in the control of the party charged with neglect, no voluntary action of the party injured being involved, common sense permits an inference of negligence from proof of the injury and the physical agency inflicting it, without requiring proof of facts pointing to the responsible human cause. The result is simply that such proof, without proof of further facts tending to show negligence, satisfies the plaintiff's duty of producing evidence sufficient to permit the trier, whether court or jury, to draw an inference of negligence." *Lowman* v. *Housing Authority,* 150 Conn. 665, 669–70, 192 A.2d 883.

Here, the court charged correctly that "[u]nless you find that all three conditions exist, the doctrine has no application" and properly listed the three conditions as set forth in the footnote.[1]

The principal weakness in the plaintiffs' claim for application of the res ipsa loquitur doctrine in this case lies, however, in the complete absence of any evidence to establish the existence of the second essential condition—that both inspection and user must be, at the time of the injury, in the control of the party charged with the negligence. See *Hunt* v.

---

[1] The court charged, in part, as follows: "First: The situation, condition or apparatus must be such that in the ordinary instance no injury would result unless from a careless construction, inspection or user. Second: Both inspection and user must be, at the time of the injury, in the control of the party charged with the negligence. Third: The injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the plaintiff injured."

*Central Vermont Ry. Co.*, 99 Conn. 657, 661, 122 A. 563. The evidence is clear that neither the "construction" nor inspection of the lotion was in the control of the defendants since it was manufactured and distributed by Sue Corey, Inc., and came in a sealed, individual patron-sized bottle, the entire contents of which were used on the plaintiff. The importance of establishing this second condition of control of both inspection and user by the party charged with the negligence was pointed out in *Jump* v. *Ensign-Bickford Co.*, 117 Conn. 110, 122, 167 A. 90, where this court said: "The purpose of that condition is to exclude the possibility of an intervening act of the plaintiff or a third party which causes or contributes to produce the accident, and it undoubtedly states a necessary precaution for a sound application of the rule in most cases."

The cases cited by the plaintiff as authority for applying the doctrine of res ipsa loquitur to situations such as this involve injuries resulting from the application of permanent waves by an electric or otherwise heated machine process. The distinction between those cases and the case before us which involves a so-called cold wave process has been clearly stated by the Appellate Division of the Supreme Court of New York in peculiarly applicable language. "In our opinion, a situation in which a hair wave is produced by the use of a device such as electrically heated curlers differs materially from one in which no such devices are used and in which only liquid solutions and curlers are utilized. In the former, the heating agent and the appliances are under the operator's exclusive management and control; and, through the senses of sight, smell and touch, or through instrumentation a competent operator should be able to perceive when the heat

becomes too intense or is of so high a degree of temperature that its duration ought to be limited. On the other hand, in the latter situation, the opportunity to perceive what effect the chemical agent is having upon the patron is not at all identical. The action of the chemical is stealthy; its development or progress is hidden; and, consequently, the operator is not in complete control. The nature, the affinities and the propensities of its chemical components are clearly not as apparent to him as the properties of heated metal curlers. Accordingly, we do not agree with those decisions which hold that the *res ipsa loquitur* rule should apply in cold-wave cases to the same extent as in the electrically heated wave cases." *Ravo* v. *Lido,* 17 App. Div. 2d 476, 481–82, 236 N.Y.S.2d 135; see generally, notes, 26 A.L.R.2d 963, 14 A.L.R.2d 860.

To interject into the jury's deliberations a doctrine inapplicable to the evidence as a matter of law, even though conditional, can only confuse and mislead them. It clearly was involved in their deliberations in view of their request for a recharge on that doctrine, and we find that its inclusion in the charge, on the evidence before the jury, constituted harmful error. In view of this conclusion, it is not necessary to consider the remaining assignments of error.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendants.

In this opinion the other judges concurred.