JOHN J. MAHON, ADMINISTRATOR (ESTATE OF RICHARD HEIM) *v.* TIMOTHY C. HEIM ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued May 4—decided July 11, 1973

*Paul B. Groobert,* for the appellant (plaintiff).

*F. Timothy McNamara,* for the appellees (defendants).

HOUSE, C. J. The plaintiff, John J. Mahon, administrator of the estate of Richard Heim, brought this action seeking to recover damages for the death of Richard Heim, allegedly caused by the negligence of the defendants, his brother Timothy C. Heim, hereinafter called the defendant, and Marshall E. Heim, his father. In their answer the defendants denied being negligent and alleged contributory negligence on the part of the plaintiff's decedent. The jury returned a verdict for the defendants, which the plaintiff moved to have set aside on the ground that it was contrary to law and against the evidence. From the court's denial of the motion to set aside the verdict and from the judgment rendered thereon, the plaintiff has appealed to this court.

In his first two assignments of error, the plaintiff contends that the court erred in finding facts stated in eight paragraphs of the finding without evidence. Since these claims of error have not been briefed or argued, they are treated as abandoned. *State* v. *Grayton,* 163 Conn. 104, 109, 302 A.2d 246. The plaintiff's remaining assignments of error attack the court's instructions to the jury, including claims of error in the refusal of the court to charge as re-

quested and in the court's charge concerning the standard of care to be applied to the conduct of the defendant, a minor.

"Claims of error addressed to the charge are to be tested by the claims of proof as they appear in the finding. Practice Book § 635; *DePaola* v. *Seamour*, 163 Conn. 246, 249, 303 A.2d 737." *Conlon* v. *G. Fox & Co.*, 165 Conn. 106, 328 A.2d 708. The following portions of the finding are pertinent to a consideration of the plaintiff's attack on the charge: On August 6, 1970, the defendant, aged seventeen, Richard Heim, aged sixteen, and a friend, John Warren, were going to pump water from Snipsic Lake into a milk tank truck in order to fill the Heim family swimming pool. The milk tank truck was owned by the defendant Marshall Heim, the father of the defendant and Richard, and this was a procedure that the family had followed before. Richard, accompanied by Warren, drove a pickup truck containing the pumping equipment to the lake shore. The defendant drove the tank truck and when he reached the entrance to a private road, it was his intention to turn the truck and back it down to the lake shore. The road to the lake shore was narrow and winding, and sloped downward. As the defendant backed the truck, he experienced some difficulty and Richard came up to give him directions. As the truck continued backing, Richard told him he was going to hit a tree. The defendant then stopped the truck, shifted into first gear and started forward but could not make headway up the hill; he then took his foot off the gas pedal, but before he was able to apply the brakes, the truck rolled back, pinning Richard between the truck and a tree, causing fatal injuries.

It was the plaintiff's claim that Richard's death was caused by the negligence of the defendant in that he failed to keep a proper lookout, in that he failed to have his vehicle under proper control, in that he allowed the truck to roll back when he knew, or in the exercise of reasonable care should have known, that the truck was in close proximity to Richard and the tree, and in that he failed to stop or turn the truck to avoid hitting Richard.

In the course of its charge on negligence, the court stated: "As I recall, the evidence disclosed that Timothy was seventeen years old at the time of the accident, and his brother Richard was sixteen years old. Of course, one who has not reached his majority may be as capable as an adult, particularly when engaging in adult activities, such as the driving of a motor vehicle on or off a public highway. However, in the case of a boy you must remember that reasonable care is reasonable care for a young man of similar age, judgment and experience, under the circumstances, and you must take all of the circumstances into consideration."

In so charging the jury the court correctly stated the settled law in this state as recently repeated in *Overlock* v. *Ruedemann,* 147 Conn. 649, 654, 165 A.2d 335, in which this court, speaking by *Baldwin, C. J.,* noted that "in determining the negligence of a minor the law applies to him a standard of conduct which will vary according to his age, judgment and experience," citing *Rappa* v. *Connecticut Co.,* 96 Conn. 285, 286, 114 A. 81, *Colligan* v. *Reilly,* 129 Conn. 26, 29, 26 A.2d 231, and *Magaraci* v. *Santa Marie,* 130 Conn. 323, 330, 33 A.2d 424; see also *Santor* v. *Balnis,* 151 Conn. 434, 436, 199 A.2d 2;

*Greene* v. *DiFazio,* 148 Conn. 419, 424, 171 A.2d 411; *Marfyak* v. *New England Transportation Co.,* 120 Conn. 46, 50, 179 A. 9, with the many cases cited therein on page 50. This accords with the generally accepted rule as summarized in Restatement (Second), 2 Torts § 283 A, as follows: "If the actor is a child, the standard of conduct to which he must conform to avoid being negligent is that of a reasonable person of like age, intelligence and experience under like circumstances."

While agreeing that the charge as given was that applicable in ordinary circumstances, in his request to charge, in his exception to the charge and in his brief the plaintiff has argued that the trial court committed error in not charging that the rule is otherwise with respect to minor operators of motor vehicles and that a minor engaging in such an adult activity as the operation of a motor vehicle should be held to the same standard of care as an adult. It is his contention that a minor's conduct should be governed by the same standard as that of an adult whenever the minor undertakes an activity usually engaged in by adults and which could seriously endanger others and himself if the care exercised should fail to meet the standard of care which would be exercised by a reasonably prudent adult in the same or similar circumstances. Such a change in or exception to the settled common-law rule has been adopted with various modifications in some jurisdictions. See the annotation in 97 A.L.R.2d 872, and cases cited, and comment c in Restatement (Second), 2 Torts § 283 A.

The adoption of such a new standard of care applicable to minors would effect a drastic change in

the law of negligence as it has been long established in this state. Aside from the case-by-case uncertainty and the problem of determining whether a given activity was an "adult activity," the same standard being applicable to cases both of negligence and contributory negligence, minor plaintiffs would to a large degree be deprived of the protection which the law has through the years sought to afford to the handicapped, the young and the immature. On the other hand, in this machine and automotive age weighty considerations of social policy furnish a strong argument for holding to an adult standard of care minors who, despite their immaturity, undertake to operate potentially destructive mechanisms.

We note that the legislature has already addressed itself to some phases of the problem. The age of majority has been reduced to eighteen by §1 of Public Act No. 127, adopted by the 1972 February Session of the General Assembly (General Statutes §1-1d), which specifically provides that "any person eighteen years of age or over shall be an adult for all purposes whatsoever and have the same legal capacity, rights, powers, privileges, duties, liabilities and responsibilities as persons heretofore had at twenty-one years of age, and 'age of majority' shall be deemed to be eighteen years." On the other hand, in the field of statutory negligence where it is settled law that the violation of a statute is negligence per se the General Assembly has recognized the application of this legal principle to statutory violations by minors but has set the age of sixteen as the cutoff age for the application of the principle to the conduct of minors, leaving it as a question of fact whether a minor under sixteen years of age was in the exercise

of due care when he violated a statutory duty.[1]
See *Worden* v. *Francis,* 148 Conn. 459, 464, 172 A.2d
196; *Santor* v. *Balnis,* supra.

As we have indicated, a strong policy argument
can be advanced for the adoption of an exception to
the standard of care applicable to the conduct of
minors, which would hold them to the same standard
of care required of adults, when they engage in cer-
tain specified activities which experience has demon-
strated to be potentially highly hazardous not only
to others but to themselves. Such activities might,
for example, well include the operation of motor-
driven vehicles and boats and the use of firearms and
explosives. The adoption of such a policy and spe-
cific exception is, however, one peculiarly appropri-
ate for further legislative consideration and action
rather than for implementation by judicial fiat.

In this case, this attacked portion of the charge to
the jury with respect to the standard to be applied
to the conduct of the two minors involved in the
accident under consideration was "correct in law,
adapted to the issues and sufficient to guide the jury."
*Moriarty* v. *Lippe,* 162 Conn. 371, 389, 294 A.2d 326;
*Amato* v. *Sawicki,* 159 Conn. 490, 494, 271 A.2d 80.

Another assignment of error pressed by the plain-
tiff is that the court erred in refusing to include in
its charge two instructions which he had requested
bearing on the issue of contributory negligence. The

---

[1] "[General Statutes] Sec. 52-217. VIOLATION OF STATUTE BY MINOR.
In all actions for recovery of damages for injury to person or prop-
erty, in which the plaintiff or defendant was a minor under sixteen
years of age at the time such cause of action arose, it shall be a
question of fact to be submitted to the judge or jury to determine
whether or not such minor plaintiff or minor defendant was in the
exercise of due care, when there is a violation of statutory duty by
such plaintiff or defendant."

substance of the first of these requests was to the effect that on the evidence the jury could find that the position of Richard at the time of the accident could be a mere condition and not a proximate cause of his death. The second request was for an instruction that "[i]f the decedent's injuries were not the normal result of his position, whether on the bumper or on the ground, then his negligence, if any, is not a proximate cause of his death." As to the first request, there is no suggestion that the court did not adequately and properly charge on the standard requisites of affirmative proof of proximate cause and the record discloses no special circumstance which would require any additional charge as to what would not be a proximate cause. The second request is obviously not a correct statement of the law because negligence may bar recovery or give rise to liability if it is a proximate cause of the result in question whether or not such a result would be "the normal result." We find no merit to these assignments of error.

The remaining assignments of error require but little discussion. One is that the court improperly stated to the jury that "[t]here are such things as pure accidents for which no one is to blame." This statement was immediately followed by an instruction with respect to the burden of proof as to negligence and proximate cause. To make the comment was well within the court's discretion in the circumstances of the case as disclosed by the finding. *Robinson* v. *Faulkner*, 163 Conn. 365, 370, 306 A.2d 857.

The final assignment of error is that the court erred in charging the jury with respect to certain

testimony of a witness who was a sister of both the defendant and Richard. She testified that on the night of the accident, after returning from the hospital, the defendant told her "that the accident was his fault, it shouldn't have happened." With respect to this testimony, the court charged the jury: "This language, if you find it was used by [the defendant] Timothy Heim, must be considered by you with a great deal of care, because words are very easy to misuse. When you come to weigh this testimony you must determine what was meant and just how far you will be justified in finding from the use of the words, if you do find they were used, that the defendant was legally liable under the law applying to this particular case. Such evidence is circumstantial in nature, and its probative value must depend upon all the other evidence and claims and surrounding circumstances." The plaintiff claims that the court erred in thus cautioning the jury but in the context in which this admonition to the jury was given we do not find any error. Just prior to this admonition, the court had charged the jury at length on the law concerning admissions. Also, as the finding discloses, after the witness had testified as indicated that her brother Timothy (the defendant) felt responsible for the death of their brother she was asked: "You mean you feel he felt responsible just because he happened to be the driver when this tragedy occurred," and her response to this inquiry was, "Yes." In the circumstances and in the context in which the court's caution to the jury was given, we do not find it to be an improper instruction.

There is no error.

In this opinion SHAPIRO, LOISELLE and MACDONALD, Js., concurred.

BOGDANSKI, J. (dissenting). I disagree and would reverse the judgment and order a new trial because the plaintiff's request to charge which would have held the defendant, Timothy Heim, aged seventeen, to the standard of care of an adult should have been granted.

It is true that minors are entitled to be judged by standards commensurate with their age, experience and wisdom when engaged in activities appropriate to their age, experience and wisdom. Hence, when children are playing with toys, operating bicycles, or engaging in other childhood activities, their conduct should be judged by the rule of what is reasonable conduct under the circumstances, among which are the age, experience and wisdom of the minors involved. *Grenier* v. *Glastonbury*, 118 Conn. 477, 173 A. 160, and cases cited in the majority opinion. The question pressed here, however, is whether the leniency standard should apply when the minor is involved in activities normally undertaken by adults.

The majority has refrained from deciding the major issue in the belief that any decision concerning the standard of care applicable to a minor who engages in adult activity is for the legislature to make. While the legislature could act and might do so with more precision than a court, the primary responsibility of determining and applying the common law remains with the court. If the common law is to retain its vitality, this court must keep the common law responsive to the times. The relaxed standard of care generally applied to children is a common-law rule developed by the courts in the context of particular cases. In this state the rule was applied as early as the case of *Birge* v. *Gardiner*, 19 Conn. 507, 511, and the authority cited by the court for its

application was not a legislative enactment, but the English case of *Lynch* v. *Nurdin,* 113 Eng. Rep. 1041 (1 Q.B. 30). The rule of care for children was thus developed long before such potentially dangerous, adult-oriented instrumentalities as automobiles were used by minors. This court should take the opportunity presented by this case to decide for itself what standard of care should be applied to minors when they engage in such adult activities as the operation of motor vehicles.

In the past decade or so, courts across the country have, in recognition of the dangers posed by motor vehicles, motorboats and airplanes, consistently held that minor operators of such mechanisms are subject to an adult standard of care. *Jackson* v. *McCuiston,* 247 Ark. 862, 448 S.W.2d 33; *Harrelson* v. *Whitehead,* 236 Ark. 325, 365 S.W.2d 868 (case of first impression); *Prichard* v. *Veterans Cab Co.,* 63 Cal. 2d 727, 408 P.2d 360 (disapproving lower court decisions to the contrary); *Wagner* v. *Shanks,* 56 Del. 555, 194 A.2d 701; *Medina* v. *McAllister,* 202 So. 2d 755 (Fla.); *Dawson* v. *Hoffmann,* 43 Ill. App. 2d 17, 192 N.E.2d 695; *Betzold* v. *Erickson,* 35 Ill. App. 2d 203, 182 N.E.2d 342 (case of first impression); *Dellwo* v. *Pearson,* 259 Minn. 452, 107 N.W.2d 859; *Wilson* v. *Shumate,* 296 S.W.2d 72 (Mo.); *Daniels* v. *Evans,* 107 N.H. 407, 224 A.2d 63 (overruling *Charbonneau* v. *MacRury,* 84 N.H. 501, 153 A. 457); *Karr* v. *McNeil,* 92 Ohio App. 458, 110 N.E.2d 714; *Neilsen* v. *Brown,* 232 Ore. 426, 451, 374 P.2d 896 ("innovation on the law of Oregon"). The rule is also recognized in Restatement (Second), 2 Torts § 283 A, comment c, in 2 Harper & James, Torts § 16.8, p. 926, and in Prosser, Torts (4th Ed.) § 32, pp. 156–57; see note, 97 A.L.R.2d 872.

The reason underlying the rule is that it would be impracticable, in view of today's activities involving participation by youth, to allow adolescents to drive cars or operate other motor-powered vehicles with less than a mature regard for the safety of others. Motor vehicles can deal harm of catastrophic dimensions. It would be unfair to the public to let a minor, in operating such a vehicle, observe any standard of care less strict than that required of other operators. *Dellwo* v. *Pearson,* supra, and other cases cited. While someone who sees children at play can tailor his conduct accordingly, the risks stemming from careless operation of a motor vehicle are too great to require others either to anticipate youthful imprudence or to bear the heavy burden of compensating for such imprudence.

In addition to the foregoing policy reasons, there are existing statutes which indicate a legislative intent to hold all motor vehicle operators of at least sixteen years of age to an adult standard of care. Section 14-36 (a) of the General Statutes provides that a minor who is sixteen years of age or more can apply for a license to operate a motor vehicle, and § 14-36 (b), which provides for the testing of all applicants, makes no distinction between adults and minors. As all applicants must meet the same standards of competence and ability before obtaining a license, the legislature must have intended that all licensed drivers be held to the same standard of care. In this respect, our laws do not differ significantly from those of other states whose courts have concluded that where statutes make no specific exceptions for minor drivers, the statutes require an adult standard of care. See, e.g., *Harrelson* v. *Whitehead,* supra; *Wagner* v. *Shanks,* supra; *Medina* v.

*McAllister,* supra; *Betzold* v. *Erickson,* supra; *Wilson* v. *Shumate,* supra. Moreover, the conclusion that minor drivers at least sixteen years old should be held to an adult standard is reinforced by the fact that § 52-217 of the General Statutes, set forth in the majority opinion, makes an exception to the standard of care in the area of statutory negligence only for minors under sixteen years of age. Presumably, then, the public policy of this state requires all persons aged sixteen and over to operate motor vehicles in accordance with the same standard of care.

The considerations which require a minor to adhere to an adult standard when driving a motor vehicle are also present when a minor flies an airplane, operates a motorboat, or while acting in an adult capacity conducts any other activity which would be dangerous to others unless done with prudent care. This is recognized in Restatement (Second), 2 Torts § 283 A, comment c, which states that a minor is to be held to an adult standard whenever he engages in "an activity which is normally undertaken only by adults, and for which adult qualifications are required."

To hold a minor to an adult standard, it is not necessary that he be on public property, for the extent of harm to others is not lessened by the circumstance of location. In *Jackson* v. *McCuiston,* 247 Ark. 862, 448 S.W.2d 33, a minor, fourteen years of age, who was operating a tractor-propelled stalk cutter on his father's farm was held to an adult standard of care. Key considerations were that he was doing an adult's job, that the job was dangerous, that he had been trained by his father to do the job

and that he had done it many times before. The *Jackson* case thus closely and persuasively resembles the facts of the present case.

I conclude that to apply a more lenient standard to minors when they engage in such adult and potentially dangerous activities as the operation of an automobile or other motor-powered vehicles is unrealistic, contrary to legislative policy and inimical to public safety. In this case, the nature of the activity engaged in required the operation of a large milk tank truck, the use of a pickup truck and the use of pumping equipment to pump water from the lake into the tank truck. This activity, involving the use of such vehicles and equipment, was clearly "an activity which is normally undertaken only by adults, and for which adult qualifications are required." I conclude, therefore, that an adult standard of care was required of the defendant, Timothy Heim.