**MISSOURI PACIFIC RAILROAD COMPANY, Appellant,**

v.

**Florentino COVARRUBIAS, Appellee.**

No. 14439.

Court of Civil Appeals of Texas.

San Antonio.

Feb. 16, 1966.

Rehearing Overruled March 23, 1966.

Groce, Hebdon, Fahey & Smith, Charles L. Smith, San Antonio, for appellant.

Lieck & Lieck, Goodstein & Semaan, San Antonio, for appellee.

MURRAY, Chief Justice.

Florentino Covarrubias, appellee, instituted this suit against Missouri Pacific Railroad Company, appellant, for damages allegedly incurred as a result of injuries sustained by his two minor sons, Guadalupe and George Covarrubias. Those injuries arose out of the explosion of a railroad signaling device commonly called a torpedo, while it was being handled by the two boys. Appellee sought damages for the hospital and medical expenses incurred in treating the injuries to his sons, as well as the loss of contributions and services occasioned by the injuries to the hands of his son Guadalupe as a result of the explosion. Guadalupe lost all but the little finger of his left hand, and the thumb of his right hand. George was not seriously injured and suffered no permanent disability. At the time of the explosion, Guadalupe was nine years old and George was younger. The trial was to a jury and, based upon the jury's answers to the special issues submitted, judgment was rendered in appellee's favor in the sum of $9,850.00, from which judgment Missouri Pacific Railroad Company has prosecuted this appeal.

The Covarrubias boys testified that George picked up the torpedo near the edge of the San Fernando Street crossing of appellant's railroad tracks in the City of San Antonio, Texas, on or about January 14, 1963, and took it to their home. They did not know that the torpedo would explode, and while Guadalupe was trying to break it open by striking it with a rock several times, it exploded and caused the injuries to his hands as heretofore stated. The evidence shows that these torpedoes were used by appellant in its flagging operations. They would be fastened to the rail, and when run over by a train would make a loud explosion, thus warning the approaching train that the track ahead was obstructed. When these torpedoes are first received by appellant they are placed under lock and key in the supply room. Thereafter, as needed, they are taken by supply men and placed in small boxes in the cabin of the locomotives and also in the cabooses. There are no records kept of how these torpedoes are used, and thus the appellant would be unable to determine whether or not one or more of such torpedoes had been lost or misplaced. The cabooses are not customarily locked when they are left unattended. Whenever a flagman or other employee of appellant had need for torpedoes, he would simply reach in the box which was not under lock and key, and take a handful of these torpedoes and either carry them in his hand or put them in his pocket. When the supply men replenished these torpedoes they simply carried them in their hands and dumped them in the box in the locomotive and the caboose. In this way it was quite possible that a torpedo might be misplaced or lost. There was evidence that children had gone into these unlocked and unattended cabooses and had taken torpedoes. On one occasion children had been seen climbing through the windows of a caboose for the purpose of taking things inside. It was also shown that appellant's employees swept out cabooses wherever they might be parked, and if a torpedo had fallen to the floor of the caboose it might be swept out with the other trash onto the ground. Cabooses had been parked short distances from where the Covarrubias boys found the torpedo in question. Under this evidence it was quite probable that the torpedo was at the place where it was picked up by George as a result of the manner in which appellant's torpedoes were handled by its employees. The jury found, in answer to Question No. 3, that the torpedo which George Covarrubias found belonged to appellant. It is conceded by appellant that there was sufficient substantial evidence to support the finding of the jury as to this issue, so we will not here discuss that evi-

dence. The jury also found, in answer to Question No. 7, that the torpedo in question was lost, misplaced or abandoned (at the place where it was found) by appellant or one of its employees; and in answer to Question No. 8, that such act constituted the failure to exercise a high degree of care, and, in answer to Question No. 9, that such failure was a proximate cause of the injuries and damages. The sufficiency of the evidence to support these findings is raised by appellant. The evidence shows that the torpedo which belonged to appellant may have gotten to the point where it was picked up by George in a number of different ways. First, it could have been dropped by a supply man while replenishing the torpedoes in a caboose; second, it might have been dropped where it was picked up, or it might have been dropped by a railroad employee somewhere else in the yards and picked up by someone and carried to where it was found; and third, it might have been taken out of the caboose by someone and thrown down where it was found. The place where the torpedo was found is generally called the railroad yards, and the evidence shows that torpedoes were not used in the railroad yards, but were used out on the main lines. This evidence was insufficient to show that appellant or one of its employees lost, misplaced, or abandoned the torpedo at the point where George found and picked it up. The fact that the torpedo may have gotten to the place where it was picked up in a number of ways, does not prove that it was lost, misplaced or abandoned at that point by one of appellant's employees. This finding by the jury is based upon conjecture or surmise as to the point where the torpedo was lost, misplaced or abandoned, and cannot be upheld by this Court. The evidence is sufficient to show that the torpedo in question was lost, misplaced or abandoned by appellant or one of its employees, but not at the point where it was picked up by George. In Williams v. United States, 252 F.2d 887, Chief Justice Hutcheson, speaking for the U. S. Court of Appeals, Fifth Circuit, had this to say:

"After a trial, in which it was established that the United States was the owner of the fuse and that it was found near the Camp Polk, Louisiana area, where maneuvers, in which such fuses were used, had been conducted, the district court found, and gave judgment, for defendant because (1) 'The Federal Tort Claims Act is to be strictly construed', and (2) 'Plaintiff has not been able to show that the fuse was placed, dropped, or lost on the road by some particular agent or employee of defendant, acting within the scope of his authority'. * * *

"This is not to say, as appellant insists we should, that on the evidence in this case a finding and judgment for plaintiff were demanded, and we should, therefore, reverse and render judgment here. It is to say, though, that the evidence would support a finding, that plaintiff had made out a prima facie case of negligence and that defendant had not borne its burden of accounting, consistent with due care, for the presence of the fuse on the road."

Magaraci v. Santa Marie, 130 Conn. 323, 33 A.2d 424.

The jury found, in answer to Question No. 10, that appellant's failure to keep any record or inventory of its torpedoes so that a check could be kept on any missing, lost or misplaced torpedoes, constituted a failure to exercise a high degree of care; in answer to Question No. 11, that such failure was a proximate cause of the injuries and damages; in answer to Question No. 12, that the appellant failed to have the receptacles where torpedoes were placed under lock and key; in answer to Question No. 13, that such failure was failure to exercise a high degree of care, and in answer to Question No. 14, that such failure to exercise a high degree of care was a proximate cause of the injuries and damages.

Appellant argues that it is well settled that negligence presupposes a breach of duty owed appellee by appellant, and whether or not a duty by appellant to appellee has been breached is determined by the standard of care imposed by law to be observed by appellant in dealing with persons situated as were the Covarrubias boys, and when the standard is a high degree of care, it is to be measured by the conduct of a very cautious and prudent man under the same or similar circumstances. Appellant further argues that before it could be determined that appellant did not act as a very cautious and prudent man under the same or similar circumstances, the jury must first know what that mythical man would have done under those circumstances, and therefore there would have to be evidence of experts as to just how a very careful and prudent railroad would take care of its torpedoes. The law requires anyone handling explosives to use a high degree of care, and under the facts as developed in this case we feel that the jury was competent to determine whether or not appellant had used that high degree of care in handling these torpedoes which is required by law, without the benefit of expert testimony. The evidence was sufficient to support these findings by the jury, and we overrule appellant's contentions.

The jury found in answer to Question No. 15, that the torpedo in question had been at the location where it was found for a sufficient length of time for appellant or its employees to have discovered the same and removed it before appellee's children picked it up; in answer to Question No. 16, that appellant or its employees failed to exercise a high degree of care in failing to remove the torpedo; in answer to Question No. 17, that such failure to exercise a high degree of care was a proximate cause of the injuries and damages; in answer to Question No. 18, that appellant railroad and its employees failed to inspect the railroad tracks and premises at the railroad crossing in question prior to the time that appellee's children crossed over the appellant's tracks on the occasion in question, and, in answer to Question No. 19, that such failure constituted a failure to use that degree of care that a person of ordinary care would have used under the same or similar circumstances, and that such failure was a proximate cause of the injuries and damages. The evidence shows that the torpedo at the time it was picked up by appellee's boys had dirt on it, and there had been no rain in San Antonio for some ten days prior to the time the torpedo was picked up. It is therefore reasonable to infer that the torpedo had been lying by the railroad track for some ten days. It was a sufficient length of time to have been discovered and removed by appellant's employees. Appellant contends that inasmuch as the torpedo was picked up on San Fernando Street, it was the duty of the City of San Antonio to inspect such street and keep it safe for people using it; that the railroad company in this instance was nothing more than an abutting landowner and was not required to inspect its railroad tracks which were across San Fernando Street. The evidence shows that the railroad company's employees were all over the railroad yards and were under instructions to keep a lookout for anything dangerous on or about the railroad tracks.

The evidence supports the findings of the jury that the torpedo belonged to appellant; that it was lost, misplaced or abandoned through appellant's negligence; that it was picked up next to one of appellant's rails, at the edge of San Fernando Street, and that appellant was negligent in not finding and removing the torpedo before it was picked up by appellee's boys.

Appellant contends that the submission of Question No. 1 was improper because appellant had admitted that children walked across its tracks which crossed San Fernando Street, and likewise it was improper to submit Question No. 12, because appellant admitted that the receptacles where torpedoes were placed were not kept under lock and key. We agree that undisputed issues should not be submitted to the

jury, and that the submission of Questions Nos. 1 and 12 was error. Rule 272 Texas Rules of Civil Procedure; 3 McDonald, Texas Civil Practice, § 12.08, p. 1074. However, appellant has not shown that its rights were so prejudiced by the submission of these questions to the jury as to require a reversal of the judgment. Rule 434, T.R.C.P.

 Appellant also contends that Question No. 4 should not have been submitted, inquiring whether George and Guadalupe Covarrubias fully realized that there was a dangerous risk involved in picking up the torpedo and taking it home with them, because it was an irrelevant, or at least only an evidentiary issue. We do not agree with this contention, but, in any event, such submission did not constitute reversible error.

Appellant introduced in evidence its Exhibits 1, 2 and 3, which were photographs showing certain burn marks in the wall of the building next-door to appellee's home and the place were Guadalupe Covarrubias was injured. It was appellant's theory that these burnt marks on the wall near the home of appellee were, in all probability, caused by throwing torpedoes against these walls, and therefore the Covarrubias children did know the danger of the torpedo and its explosive nature. Later appellee moved to strike these exhibits from the record, which the court granted. Under all the circumstances, we feel that there was no reversible error in the action of the trial court in striking these three exhibits.

■ Appellant next contends that the verdict of $9,850.00 is excessive. We cannot agree. The evidence shows that Guadalupe was left in a horrible condition as a result of this explosion. He lost his entire left hand, with the exception of the little finger, and also lost the thumb of his right hand. When his mother sends him on an errand he has difficulty in remembering the purpose of the errand. He tries to hide the loss of his left hand by keeping the stub in his pocket. The jury must be allowed a great deal of discretion in fixing damages of this nature, and we are unable to say that the jury verdict in this case is excessive. Union Transports, Inc. v. Braun, Tex. Civ.App., 318 S.W.2d 927.

The judgment is affirmed.