VINCENZO DIMAIO, ADMINISTRATOR, *vs.* THE YOLEN BOTTLING WORKS ET ALS.

Third Judicial District, Bridgeport, April Term, 1919.

PRENTICE, C. J., RORABACK, WHEELER, BEACH and MALTBIE, Js.

The plaintiff's intestate, a boy about five years old, while in the highway, was struck and killed by the defendants' wagon, and the defendants were charged with having caused the injury through the negligence of their driver. They had a verdict, and from the judgment thereon the plaintiff appealed, assigning error in the charge as made and in the failure of the court to charge as requested. *Held:—*

1. That in so far as the requests to charge correctly stated material propositions of law, they were all adequately and fully met by the trial judge in his instructions and comments to the jury.

2. That the suggestion of the court, to the effect that while pedestrians and teams had equal rights in the highway, you would not ordinarily expect teams to travel on the sidewalks, or pedestrians to walk lengthwise of the street, was pertinent and helpful in passing upon the respective claims of the parties.

3. That the fact that young children did not ordinarily have an appre-

ciation of danger was one so commonly known that it was bound to be considered by the jury, whether specifically stated in the instructions or not.

4. That the instructions to the effect that the defendants' driver was bound to be vigilant in his lookout, but whether he should look ahead or sideways depended upon the circumstances and the situation,—was pertinent and proper in view of the respective claims of the parties as to how the accident occurred.

5. That a reference to the claims of the plaintiff, as his "theory" of how the accident happened, was not belittling or prejudicial to his case, but was the customary form of expression used by trial courts in stating the position of the respective parties upon the evidence.

6. That although the credibility of the plaintiff's claims might have been affected by the pertinent considerations addressed to the jury, the court was well within its prerogative in making them.

Argued April 15th—decided July 16th, 1919.

ACTION to recover damages for negligently running into and killing the plaintiff's intestate, brought to the Superior Court in New Haven County and tried to the jury before *Gager, J.;* verdict and judgment for the defendants, and appeal by the plaintiff. *No error.*

Upon the trial to the jury the plaintiff offered evidence to prove: that Myrtle Avenue at the point of the accident was thickly populated and having large numbers of children in the neighborhood; that the defendants' team was coming up Myrtle Avenue close to the right-hand curb at a fast walk and that just prior to the accident the driver on the front seat had his head turned to the left and was looking forward or to the movements of the horse, while the reins lay in his lap; that apparently he was watching some small boys running after a peddler's wagon; that just after passing the peddler the defendants' team swerved to the left, and at this time the plaintiff's intestate ran across the street in front of the horse and, turning down the street, was hit by the left front wheel of defendants' team; that the driver was not looking ahead or paying attention to where his team was going, but was watching

DiMaio *v.* Yolen Bottling Works.

some boys pulling shoes out of the peddler's wagon; that at the time of the accident the street was unobstructed, and the cause of the accident was the failure of the driver to keep a proper lookout, and allowing his horse to swerve to the left and thus hit the plaintiff's intestate.

The defendants offered evidence to prove that their driver was driving a double-decked wagon used for the sale and delivery of bottles of temperance drinks, and that a helper stood on the running-board on the left-hand side of the wagon in order to prevent boys from jumping on the steps and stealing these bottles; that the horse was going at a walk and on a considerable up-grade; that just before the accident a wagon peddling shoes and one peddling vegetables passed the defendants' team going in an opposite direction; that a number of small boys were following these wagons and pulling shoes and vegetables from them; that just before the accident the driver had his head turned slightly to the left, watching to see that boys did not jump on his wagon and that he should not run over the boys following the other wagons; that the plaintiff's intestate passed in front of defendants' team and while in the middle of the street was struck by the left-hand wheel of the defendants' wagon; that he was either intent on joining the boys who were pursuing the defendants' team, or those pursuing the two peddlers' teams.

It was conceded that the boy, four years and ten months old, was of good physique, strong, well, and of fair intelligence.

*Charles S. Hamilton* and *John J. Sullivan,* for the appellant (plaintiff).

*Samuel A. Persky,* for the appellees (defendants).

WHEELER, J. The action is one of negligence, and the errors assigned comprise requests of plaintiff to charge which were alleged to have been omitted, and portions of the charge as made.

One request was that if the jury found that the injury to plaintiff's intestate was caused by the negligence of the driver of the defendants,—their agent and servant—to which the intestate did not materially contribute, the defendants would be liable.

The substance of this was a necessary part of the body of any intelligent charge. The court fully covered the request, saying that the action was brought under the statute for a death due to the negligence of the defendants, and since the driver was admittedly acting for the defendants, his negligence was their negligence, and that the negligence of the defendants was synonymous with that of the driver.

Another assignment of error was the failure of the court to properly charge as to the duty owed the intestate, a child of four years and ten months, of good physique and health and of fair intelligence.

This overlooks the charge made, which followed our law. "The law, however," said the court, "does not require manifest impossibilities; the law does pay regard to the immaturity of childhood and does not require the same extent of care in an immature child that it would in an adult person. . . . Ordinary or reasonable care as applied to a young child means such care as may reasonably be expected of children of similar age, judgment and experience, under the circumstances. . . . The question is, is there anything in the conduct that can be attributed to the child, that indicates a want of such care as you could expect reasonably of a child of that age?"

One fatality the plaintiff finds in the charge is, that it undertakes to refer the jury to a definition of the

care required of a child, as given in the judge's charge in a former case tried to the jurors on this panel. The court not only refers to what had been said, but restates it: "And I had occasion to state the other day, and I restate to you here;" and then follows the later part of the statement of the care owed the child, which we quote above. In the light of this, the criticism seems hypercritical. The plaintiff further requested the court to charge that "the plaintiff's intestate had the right to cross the public highway . . . as much as the defendants' team had the right to drive thereon." We find the court did so charge, but added: "You must remember always there that in the cities, with the paved walks and so forth, while you cannot say every one had not the right to be on any part of the street, where there is practically no distinction, that ordinarily you do not expect teams to travel along the sidewalks, and ordinarily . . . you do not expect pedestrains to travel, certainly, lengthways of the street, however much they may cross the street." This suggestion was one of eminent practicality, and one of the important considerations by which the jury were to measure the driver's conduct. We cannot follow the plaintiff in his claim that the court places *in pari passu*, as equally negligent, the child walking lengthwise across the street and a person driving a team on the sidewalk. The court's illustration served its purpose in bringing out sharply whether the driver could be expected, in the exercise of ordinary care, to foresee that the child would cross the street lengthwise, and in consequence to have been keeping a lookout for such an occurrence.

The plaintiff requested a charge that in arriving at a conclusion whether the defendants' driver was guilty of negligence or not, the surrounding circumstances should be considered, the populous character of the street, the likelihood of children being in the street

and of their crossing from one side to the other, and to bear in mind the characteristics of young children in respect to their nonappreciation of danger, and therefore greater caution must be exercised in respect to children than in respect to grown up people. This request was correct in law and complied with by the court, except that the element of nonappreciation of danger by children was omitted. This was a fact within common knowledge, and bound to be considered by jurors whether incorporated in the charge or not, hence no harm was occasioned by its omission.

The plaintiff also requested the court to charge: "So that it becomes the duty of the driver not only to keep a lookout for children on the street, but if he sees a child apparently in danger in crossing the street ahead of his team to have his team under control so that he could either turn aside and inflict no injury, or stop the team in time to prevent an injury occurring." The court met this request by charging that the driver must be reasonably vigilant to look out, but whether he should look ahead or sideways depended on the circumstances of the case, and it must be remembered that if one cannot do two things at one time he ought to do that thing that the ordinarily prudent, careful man, having regard not only for the boy's interest but all others around there, would be most likely to do, and that the attention may be momentarily diverted. So that the question is, was the attention of the driver diverted justifiably so that the boy ran across the street without his knowing it? Was the driver justified in not having his attention ahead at the time when the little boy ran around his wagon?

In view of these two claims as to how the accident happened, this comment was pertinent. It did not, as the plaintiff claims, deny the duty of the driver to keep a lookout. It expressly affirmed this duty and then

pointed out the consequences when the attention was momentarily diverted in the exercise of due care. That situation upon the facts in evidence was one for the consideration of the jury.

The plaintiff claimed that just before the boy was struck or got past the head of the horse, the horse was pulled to the left and the boy was struck by the front wheel. The defendants claimed that the boy ran across the street ahead of the horse and while running down the street ran into the wagon wheel, not paying attention to where he was going. The court speaks of these two claims, and then refers to that of the plaintiff as the "theory" of the plaintiff. The plaintiff complains that this presents the case of the plaintiff as a mere theory instead of one supported by evidence. The court used the terms "claims" and "theory" in the same sense. This is a customary use by trial courts to express the relative position of the parties upon the evidence. In this instance the position of the plaintiff was neither ignored nor belittled. On the contrary, it was stated with clearness, although undoubtedly its credit was affected by the considerations which the court presented concerning it. But this was well within the prerogative of the court.

Other assignments of error, not included in the foregoing discussion, are not of sufficient consequence to warrant a statement of the reasons justifying their overruling.

There is no error.

In this opinion the other judges concurred.