JULIUS LEDERER, ADMINISTRATOR, *vs.* THE CON-
NECTICUT COMPANY.

Third Judicial District, Bridgeport, October Term, 1920.

WHEELER, C. J., BEACH, GAGER, CASE and CURTIS, Js.

In the operation of his car, a motorman is bound to keep in mind the
populous character of the neighborhood, the likelihood of children
being in the street, and their characteristic nonappreciation of
danger; and therefore a charge that it was not his duty, under such
circumstances, to keep a more vigilant watch for children than for
adults, is erroneous.

An immature child is required to use such judgment and experience
as children of similar age, judgment, and experience would use
under the circumstances.

A charge that a child was guilty of contributory negligence if he knew
the danger from trolley-cars, and, notwithstanding, rode out
suddenly upon his tricycle from the sidewalk upon the track, is
erroneous, since such knowledge is but one component, the judg-
ment of the boy—that is, his discretion to heed and his power of
self-control—being the predominant element in ascertaining
whether he has been guilty of contributory negligence.

In the present case the trial court instructed the jury that the motorman
was not bound, in the exercise of ordinary caution, to anticipate
that either adult or child would suddenly attempt to cross the
street in the middle of a block on a tricycle, without taking proper
heed and caution. *Held* that as applied to a child of immature
years this instruction was erroneous, since it relieved the motorman
of the duty of keeping a lookout and of determining, when he saw
the boy taking his tricycle from the curb and placing it in the gutter,
that he was probably about to follow his mother and cross the
street,—the only reasonable conclusion to draw upon the facts as
claimed by the plaintiff.

The jury cannot properly be asked to pass upon the question of the
contributory negligence of an immature child, unless the correct
rule for determining that question has been given them.

A motorman's conduct is not necessarily to be judged by the circum-
stances as they appeared to him at the time, but as they should or
would have appeared to him had he exercised reasonable care.

The speed of a trolley-car is always associated with other circumstances,
and it should be so presented to the jury when made the subject of
discussion in a charge.

A charge which purports to state the grounds of negligence upon proof
of anyone of which a plaintiff can recover, should state all of them.

Lederer *v.* Connecticut Co.

A claim which the record fails to show was made in the court below,
    cannot properly be made the ground of an assignment of error.
Prejudicial error will rarely be found merely for the exclusion of evidence
    sought to be elicited by leading questions, as the ground of the
    objection can be readily avoided by counsel in changing the form of
    the question.

Argued October 27th—decided December 22d, 1920.

ACTION to recover damages for personal injuries resulting in the death of the plaintiff's intestate, and alleged to have been caused by the negligence of the defendant, brought to the Superior Court in New Haven County and tried to the jury before *Webb, J.;* verdict and judgment for the defendant, and appeal by the plaintiff. *Error and new trial ordered.*

The plaintiff offered evidence to prove the following facts: On May 19th, 1917, Mrs. Burkle accompanied by her daughter whom she held by the hand, and by her son William, aged five years and eight months who was riding a tricycle just in front of her, left her home on Congress Avenue, New Haven, and walked east along the north sidewalk a short distance when she turned south, and before descending from the curb to the traveled way she looked to the east and saw a trolley-car approaching coming toward her on the north track about six hundred feet distant and traveling at a speed of twenty miles an hour.

The double trolley-tracks of defendant were in the middle of the street. At this point the street was thirty-eight feet two inches from curb to curb, the distance from the north curb to the north rail of the north track was eleven feet eight inches; between rails four feet eight and one half inches, and between the tracks five feet, leaving the space from the south rail of the south track to the south curb twelve feet and one inch.

The neighborhood from Downes Street beyond the

place of accident was populous and occupied chiefly by dwelling-houses.

The line of vision of Mrs. Burkle and William, while on the sidewalk or in the traveled way, was unobstructed looking east and up the street as far as and beyond Downes Street. It was likewise unobstructed from any point in the street looking south from and beyond Downes Street, and the motorman, had he looked, could have seen Mrs. Burkle and her two children during all the time after she left her house and as they left the sidewalk and walked or rode across the street.

Mrs. Burkle stepped from the curb and had nearly walked across the street when she turned and saw William on his tricycle between the rails of the north track and the trolley-car ten feet from him and approaching at the speed of twenty miles an hour. This car was near the end of its run. The conductor was at the time of the accident in the middle of the car preparing for the return trip, while the motorman was bending over the chain and preparing the car for the return trip and keeping no lookout. Mrs. Burkle, on seeing William in peril, screamed, and the motorman hearing the scream straightened up and placed his left hand on the lever. He rang no gong and gave no warning to the child of the car's approach, and did not drop his fender. The car struck the child, threw him from his tricycle, and he died as a result of the collision.

When Mrs. Burkle stepped into the gutter to cross the street, William dismounted from his tricycle and put it in the gutter and the car was then five hundred feet distant. He then mounted and rode across the street and onto the north track where defendant's car hit him. The motorman had time and opportunity to have stopped his car and dropped the fender and given the child warning of the car's approach before hitting

the child, but he failed to do these because he was not keeping a proper lookout and did not have his car under control. When the car was fifty feet or more away from William, the motorman knew that William was then at the curb and headed across the street. He could at this time have stopped his car before reaching the place of accident.

The defendant offered evidence to prove these facts: At all times prior to the accident the motorman was keeping a proper lookout, had the car under proper control and was operating it at proper speed, and was using due care to avoid striking persons who might be on the track. The motorman did not see Mrs. Burkle and daughter when they crossed the street, owing to the distance the car was away. He saw the boy William when he was getting from the curb to the street and the car was then fifty feet away in a direct line from the boy. He sounded his gong, and there was nothing to indicate that the boy would attempt to cross the track. As soon as the boy started from the curb toward the track the motorman sounded his gong and reversed his car and did all he could to stop the car. He did not drop the fender because there was not time. The motorman did all he could after he saw the boy was in peril, but it was impossible for him to have avoided striking the boy. The cause of the accident was the act of the boy William in riding onto the north track when the car was only a few feet away. There was nothing in the circumstances that would have warned the motorman, who was keeping a proper lookout, that the boy was in, or about to enter into, a position of peril, before the motorman acted.

*Frank S. Bishop*, for the appellant (plaintiff).

*Harrison Hewitt*, for the appellee (defendant).

WHEELER, C. J. The plaintiff claimed to have proved that the injuries to the decedent resulted from the failure of the motorman to keep a proper lookout, to have his car under proper control, to give warning of the approach of the car, and to drop his fender when danger of collision threatened.

The decedent was a child of immature years. The court instructed the jury that it "was not his [the motorman's] duty in the absence of special circumstances, which do not appear in this case, to keep a more vigilant watch for children than for adults, since in the nature of things his lookout must be for all legitimate users of the street alike. It was only after the actual presence of the plaintiff's intestate in danger or about to go into danger was seen or ought to have been seen by him, that his duty to him, plaintiff's intestate, was greater than it would have been to adults." This was error.

The special circumstances do appear: a congested and populous neighborhood, composed mainly along this street of dwelling-houses and a traveled way thirty-eight feet wide. It was the motorman's duty to keep in mind the populous character of the street, the residential character of the neighborhood, the likelihood of children being in the street and of their crossing from one side to the other, and to bear in mind the characteristics of young children in respect to their nonappreciation of danger; and therefore reasonable care by him at this place would mean the operation of his car with greater care to avoid injury to children than if they were adults able to better help themselves. *DiMaio* v. *Yolen Bottling Works*, 93 Conn. 597, 107 Atl. 497. The motorman's duty was to operate his car in this locality in the expectancy of children being upon this street and upon the railroad track; his duty in this particular was to anticipate the danger. His

duty never varied. It did not rest dormant until he saw, or ought to have seen, a child in danger or about to go into danger.

The verdict of the jury, taken in connection with the claims of the parties of evidence proved, would indicate that the question of contributory negligence was the decisive factor in the verdict. If this be so, the importance of the instruction upon the issue of the boy's own negligent conduct is great. A part of the instruction was this: "Again, the plaintiff's intestate if only five years and eight months old was bound to use such care as reasonably prudent boys of his age under similar circumstances would have used. . . . If . . . you do not find that he acted as a reasonably prudent boy of his age ordinarily would have acted in going upon the track when he did, and that his act in so doing was the material contributing cause of the accident, then your verdict should be for the defendant." This instruction differs from our rule of reasonable care for the immature child. We merely require him to use such judgment and experience as children of similar age, judgment and experience would use under the circumstances. "Ordinary or reasonable care, as applied to a young child, means such care as may reasonably be expected of children of similar age, judgment and experience, under the circumstances." *DiMaio* v. *Yolen Bottling Works*, 93 Conn. 597, 600, 107 Atl. 497; *Rohloff* v. *Fair Haven & W. R. Co.*, 76 Conn. 689, 693, 58 Atl. 5; *Kishalaski* v. *Sullivan*, 94 Conn. 196, 108 Atl. 538.

The court was also in error in charging that "if you believe from the evidence that plaintiff's intestate . . . knew that trolley-cars ran frequently through Congress Avenue, and knew that it was dangerous . . . and, notwithstanding, without looking or taking other precautions to see whether one might be coming, rode

out suddenly from the sidewalk upon the track immediately in front of a car so that he was instantly struck after reaching the track, and that such conduct was the proximate cause of his injury, your verdict should be then under such facts for the defendant." The court in this instruction makes the contributory negligence of the boy determinable by the knowledge he then possessed. Knowledge of the child is one consideration in ascertaining whether he has been guilty of contributory negligence, but it is not the controlling element. The judgment of the boy—that is, his discretion to heed and his power of self-control—is the predominant element. *Brennan* v. *Fair Haven & W. R. Co.,* 45 Conn. 284, 298; *Rohloff* v. *Fair Haven & W. R. Co.,* 76 Conn. 689, 693, 58 Atl. 5; *Birge* v. *Gardner,* 19 Conn. 507, 512.

The court further charged: "I do not think a motorman is under ordinary circumstances bound in the exercise of ordinary caution and prudence to anticipate that a pedestrian, either adult or child, will suddenly attempt to cross in the middle of a block on a tricycle or velocipede, without at least giving some proper heed and caution to the possibility of being caught by an approaching trolley-car under such circumstances." This instruction, as well as the latter part of the preceding instruction as applied to a child of immature years, is erroneous. Such conduct cannot be said as matter of law to be negligent. "Such conduct may be evidence of contributory negligence in a child as described [age six], but not necessarily conclusive." *Murphy* v. *Derby Street Ry. Co.,* 73 Conn. 249, 254, 47 Atl. 120. The instruction as given would relieve the motorman, in the situation which the plaintiff claimed this case presented, of the duty of keeping a lookout and of determining when he saw the boy taking his tricycle from the curb and placing it in the

gutter that he was probably about to follow his mother and cross the street. Yet this was the reasonable conclusion to draw if the facts were as the plaintiff claims them.

The further instruction: "Again, if you find that the proximate cause of the accident was the act of the plaintiff's intestate in riding directly in front of the car, when he was so near that it was impossible for the motorman in the exercise of reasonable care to avoid striking him, the plaintiff cannot recover,"—is another instance where the court is applying to the child the rule for the adult. The jury ought not to be asked to pass upon the question of the contributory negligence of the child, without having presented to them the rule to which we have referred, by which this is to be found; and because this question could only be decided by consideration of the age, maturity, intelligence, experience and judgment of the child in the light of the circumstances present, it was one for the jury. *Kishalaski* v. *Sullivan*, 94 Conn. 196, 108 Atl. 538.

The court instructed the jury that, " in an emergency when the motorman has but a second or two to act, the reasonableness of his conduct is to be judged under the circumstances as they appear to him at the time." His conduct is not to be judged as the circumstances appeared to him, for he may not have acted as the reasonably prudent man in seeing, knowing and appreciating them, but as they ought to have appeared to him in the exercise of reasonable care.

The instruction upon the element of speed is one of the strenuously urged claims of error. The court followed defendant's requests to charge, which, read as a whole, resolve themselves to this: "What is a reasonable speed for a street-car depends upon all the surrounding circumstances. . . . It is only when the speed is so great as to cause unreasonable and un-

necessary danger to other users of the highway who are themselves taking reasonable care, that it could be said to be negligence." This was correct, and sufficiently plain and definite to be capable of being understood and applied by the jury. The request of the defendant that "mere evidence of high speed, and of high speed alone, is not evidence of negligence," should not have been given; not because it is a wrong theoretical statement, but because it is an impractical proposition to put before a jury. Speed is always associated with other circumstances, and it should be so presented to the jury when made the subject of discussion in a charge.

The court charged in the language of defendant's request: "If you find that the car was being operated at a rate of speed excessive under the circumstances . . . , plaintiff cannot recover unless he proves by a fair preponderance of the evidence that this excessive speed, lack of lookout and lack of warning, was the proximate cause of accident." The "and" before "lack of warning" was probably intended to be "or." Other parts of the charge make this clear. The instruction is also open to the criticism made, that it excludes one of the elements of negligence relied upon by the plaintiff, the failure to drop the fender.

Assignment of error for failure to charge on the subject of wantonness, in connection with the subject of contributory negligence, is not well taken. The case did not present the elements upon which to base such a claim, and the record does not show that such claim was made in the trial court.

It is significant that the only parts of the charge which are claimed to be erroneous, are eleven of the requests to charge which the court incorporated in its charge.

The five assignments of error in the rejection of

evidence, which are pursued, are for the exclusion of alleged leading questions. It will rarely happen that prejudicial error will be found upon such assignments of error. Counsel can readily, and should, avoid the objection. The record indicates unnecessary objections, somewhat too stringent ruling in the exclusion of such questions, and an unwillingness on the part of counsel to change the form of his question in accordance with the ruling.

There is error, the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.