[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR JUDGMENTNOTWITHSTANDING THE VERDICT AND MOTION TO SET ASIDE THE VERDICT
The defendants, Wesley Downing, John Gray, Tracy D'Aquila, Jeanne Boothroyd, Lisa Pandolfo, Susan Skarb, Shelly Barone, Patricia Vance, and the City of Middletown have moved to set aside the jury's verdict rendered after a trial in which the plaintiff, Theresa Spruill, administratrix of the Estate of her five year old son, Steven Alexander Hannah, claimed that the negligence of those CT Page 10396 defendants and five others caused the drowning death of her son at a day camp operated by the City of Middletown at Crystal Lake on July 21, 1992. The aforementioned defendants have also moved for judgment notwithstanding the verdict.
The defendants have advanced several grounds in support of their Motions. The primary ground is that the plaintiff has failed to prove beyond the realm of surmise and speculation that the defendants' negligence caused the death of the plaintiff's decedent. This argument is based on the absence of evidence as to precisely when, where, or how Steven went under the water and drowned.
The defendants also argue that the verdict should be set aside based on various alleged errors by the court, including the failure to submit interrogatories to the jury, the failure to return the jury to recalculate percentages of negligence after the verdict, and various other errors in the charge and on evidentiary rulings. In addition, the defendants argue that both the economic and non-economic damage components of the verdict are excessive.
Allegations and Evidence as to Negligence
The Complaint contained numerous allegations of negligence, including the following: the water area provided for children participating in the Camp Crystal program was too deep given the number, ages, heights and swimming abilities of the children in that program; an insufficient number of lifeguards were provided, given the conditions existing; too many children were allowed into the water simultaneously; the lifeguards were inattentive; no system of color-coded bracelets, trunks or caps was employed; the defendants failed to properly monitor the actions of the decedent in the water although they knew or should have known that he was non-swimmer or very poor swimmer; and they did not adhere to the "buddy check" system immediately prior to the drowning.
After a trial in which both the plaintiff and the defendants enjoyed excellent legal representation, the jury could have found as follows. At the time of the drowning Steven was five years old and three feet eleven inches tall. He was participating in a day camp program known as Camp Crystal sponsored by the Park and Recreation Department of the City of Middletown. Steven could not swim. His mother had indicated that Steven could not swim on the application form she was required to fill out in order for Steven to participate in the recreation program. None of the counselors CT Page 10397 or lifeguards at the day camp program saw the application form. However, every camper was treated as a non-swimmer and was instructed not to go into the water above their waist.
The City's day camp program took place at Crystal Lake in Middletown. Crystal Lake was open to the public on the day of the drowning. The Camp Crystal campers were required to swim in a roped off area, approximately 65 feet wide and 45 feet long, which was separated from the public swimming area. The water at Crystal Lake became murky several feet out. The Camp Crystal swimming area was approximately four and one half feet deep at its deepest point. On the day of the drowning there were approximately 75 children, ranging in age from five to ten years, present at Camp Crystal.
Camp Crystal did not stagger the swimming times of its campers. In other words, every child was permitted to be in the water at the same time. The Camp had no separate shallow area reserved for very young, small campers, such as Steven. It also had no system of identifying non-swimming campers by using such things as color-coded caps or bracelets. The foregoing precautions could have been taken by the Camp director, but were not.
At the time of the drowning there were 45-65 children in the water. One lifeguard, John Gray, sat in the lifeguard chair scanning the water for signs of swimmers in distress. Eight counselors were also scanning the water. Shortly before the drowning, John Gray had observed Steven riding piggyback on another child in water which was three to three and one half feet deep.
A nine year old camper, Paul Pryor, was swimming in approximately four feet of water when he stepped on something, which he discovered to be the body of Steven. Paul Pryor then went below the water level and pulled Steven up. He and his friend pulled Steven toward shore. While Paul was attempting to get Steven to shore he called out to John Gray several times. However, neither Gray nor any of the counselors who were scanning the water observed the rescue activities of Pryor and his friend until the two had managed to drag Steven to a point close to shore.
Once he saw Pryor with Steven's body, John Gray commenced resuscitation attempts and summoned an ambulance. Steven died several days later at Hartford Hospital. The physician in charge, of the pediatric intensive care unit at Hartford Hospital, Dr. Spivak, opined that the condition of Steven's lungs indicated that CT Page 10398 he had been under the water from two to as long as fifteen minutes.
The plaintiff and the defendants each called experts in the field of water safety and lifeguarding. Both experts were in agreement that drownings are either active or passive. An active drowning is one in which the swimmer struggles for air prior to submerging. In a passive drowning the swimmer slips under the water without a struggle. Both experts agreed that the failure of a lifeguard to observe a passive drowning is not negligent, because by definition there is nothing to observe.
Camp Crystal used a "buddy check" system to keep track of the campers in the water. The buddy check was to occur at ten to fifteen minute intervals and was effected by the lifeguard blowing his whistle, and all the campers holding up the hand of the child who had been designated as their "buddy."
Tracy D'Aquila was in the lifeguard chair immediately before John Gray. She did not sit in the chair for the entire time of her normal thirty minute shift because she was called away to a meeting. John Gray took her place in the lifeguard chair. Neither Tracy D'Aquila nor John Gray recalled doing a buddy check for a fifty minute period prior to the time Steven was found underwater.
Legal Analysis of Negligence and Causation
The defendants' primary argument is that no one saw exactly when, how or why Steven went under the water and, therefore, the verdict in favor of the plaintiff must necessarily have been based on impermissible conjecture and speculation. The defendant relies on cases such as Wu v. Fairfield, 204 Conn. 441, 528 A.2d 364
(1987); Monahan v. Montgomery, 153 Conn. 386, 216 A.2d 824 (1966);Palmieri v. Macero, 146 Conn. 705, 155 A.2d 750 (1959); and Boehmv. Kish, 201 Conn. 385, 517 A.2d 624 (1986).
In Monahan v. Montgomery, supra, the plaintiff's decedent was raking overgrown brush and branches on the defendant's property when he fell and was injured. No one saw him fall. After the fall the decedent stated that he had tripped on a branch, but did not identify the branch. He died two days after the fall without providing any additional information on the circumstances surrounding his fall. The Connecticut Supreme Court upheld a judgment notwithstanding the verdict on the grounds that there was no evidence introduced to establish that the defendant had notice of the presence of the specific defect which caused the injury. CT Page 10399
Palmieri v. Macero, supra, involved an automobile accident brought by the passenger against the defendant's decedent, the driver. The plaintiff testified that he had been asleep in the car and was awakened only when it struck a guardrail before going over an embankment. There were no witnesses to the accident, which the driver did not survive. Marks on the highway indicated that the car had been traveling at a fast rate of speed and was out on control. Observing that any one of a number of forces might have "impelled the car along its erratic course," the Court held that the jury's conclusion that the negligence of the driver was the proximate cause of the accident "was without evidential basis and could only have resulted from guesswork." 146 Conn. at pp. 707-708.
Where the plaintiff entered his vehicle in an inebriated condition, drove the vehicle onto a highway and next found himself on the floor of the vehicle with a broken neck without any recollection of how the accident had occurred, the Supreme Court upheld a directed verdict in favor of the defendant. Boehm v. Kish,201 Conn. 385, 517 A.2d 624 (1986). In Boehm the defendant was the owner of a cafe in which the plaintiff had consumed an excessive amount of alcohol prior to driving his vehicle. The Court stated:
 In the present case, as in Palmieri, any one of a number of factual possibilities may explain the actual cause of the accident. For example, as the trial court surmised, a vehicle might have come across the median divider and collided with the plaintiff's car, or might have hit his car form the rear. The plaintiff introduced no evidence to show whether the car had collided with any object, whether the car had been damaged, or even to show its position on the highway when it was found. There were no medical reports opinion on how the plaintiff's particular injuries might have occurred. In sum, only speculation and conjecture could link the plaintiff's injuries to the conduct of the defendants.
201 Conn. at 392.
The plaintiff has relied on cases such as Blados v. Blados,151 Conn. 391, 198 A.2d 213 (1964) and Engengro v. New Haven GasCo., 152 Conn. 513, 209 A.2d 213 (1965) wherein the Court has held that the trier of fact may rely on circumstantial evidence to infer the necessary causative link between the defendant's negligence and the plaintiff's injury. CT Page 10400
In Blados the Court held that a directed verdict was erroneously granted in favor of the defendant based upon the following evidence. The plaintiff's decedent stated that he was going to the defendant's house. He was sober at that time. Approximately eight hours later the body of the decedent was found lying on a walk below the rear outside stairway at the defendant's house. "The decedent was lying on his back with his arms outstretched and his head resting on the walk just below the outer edge of the stairway. His legs extended away from, and at a right angle to, the stairs. . . . He had sustained a fracture at the base of the skull and a laceration at the same location. . . . In the opinion of the medical examiner, the decedent had fallen a distance greater than his height and had struck his head on the walk at the place where his body was found; . . . There was evidence to show that the stairway was steep, at an angle approximating forty-five degrees; the risers of the stairs were uneven and of varying heights; the treads were of varying widths; the handrail was insufficient, of improper height and unsafe. A leader from the roof projected into the stairway for several inches, creating a hazardous condition."151 Conn. at 393-394.
In reversing the judgment of the trial court the Court inBlados stated, "[I]t is true that there was no direct evidence to show that the decedent was ascending the stairway or that he fell from it. Nevertheless, triers of fact must often rely on circumstantial evidence and draw inferences from it. Cayer v.Salvatore, 150 Conn. 361, 363, 189 A.2d 505. There is no rule of law which forbids the resting of an inference on facts whose determination is the result of other inferences. Sliwowski v. NewYork, N.H. H.R. Co., 94 Conn. 303, 310, 108 A. 805; Ruerat v.Stevens, 113 Conn. 333, 338, 155 A. 219; State v. Foord, 142 Conn. 285,294, 113 A.2d 591. Proof of a material fact by inference need not be so conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact. LeBlanc v. Grillo, 129 Conn. 378, 381, 28 A.2d 127."151 Conn. at 395.
In Engengro v. New Haven Gas Co., 152 Conn. 513, 209 A.2d 174
(1965) the plaintiff was injured in an explosion as she attempted to light the pilot light of a gas stove. She sued the defendant gas company for negligently failing to discover a gas leak, which she claimed was the cause of the explosion. The gas company claimed that the explosion occurred because the plaintiff left the CT Page 10401 gas valve to the pilot light open for too long prior to attempting to light the stove. There was evidence that the gas company had inspected for leaks immediately prior to the explosion and had found none. The pilot was found off after the explosion and there was no evidence that it had been touched after the explosion. In setting aside a directed verdict in favor of the defendant the Court stated:
 Either there was a leak or the plaintiff was negligent in her procedure. We cannot say that the proof offered by the plaintiff is conclusive as to a leak having been present, but it is not necessary that only one theory be suggested by the evidence for it is the particular function of the jury to accept one theory and reject another. LeBlanc v. Grillo, 129 Conn. 378, 383, 28 A.2d 127. We do not require that the plaintiff's evidence exclude every other hypothesis but her own. Dickson v. Yale University, 141 Conn. 250, 253, 105 A.2d 463; LeBlanc v. Grillo, supra, 381; Bradbury v. South Norwalk, 80 Conn. 298, 301, 68 A. 321.
152 Conn. at 517.
From the above cases it appears that the distinction between impermissible speculation and permissible inference is elusive at best.
When the evidence in this case is taken in a manner most favorable to the plaintiff, as it must be on a motion to set aside the verdict, Campbell v. Gould, 194 Conn. 35, 41, 478 A.2d 596
(1994), the jury could have inferred that the decedent's drowning was an "active" drowning, that is, that Steven struggled in water over his head for twenty to sixty seconds before submerging and that the lifeguard and counsellors failed to notice the struggle.
Evidence permitting such a conclusion included the following: Steven was found in four feet of water, but was himself only three feet eleven inches tall; shortly before the drowning Steven was seen riding piggyback in water which may have been over his mouth level; and neither the lifeguard or others watching the water saw Paul Pryor and his friend discover Steven's body, pull it out from under the water, and drag it to shore, which activities may have taken more than sixty seconds to accomplish.
The defendants have focused their argument on allegations of CT Page 10402 negligence concerning their failure to observe the actual drowning. They have cited many cases in which there was a lack of evidence as to when, how, or why the victim submerged. See, i.e. Wu v.Fairfield, 204 Conn. 441, 528 A.2d 364 (1987); Mullen v. Russworm,90 S.W.2d 530 (Supreme Ct. Tenn. 1936); Prince v. Mallard LakesAssociation, 346 S.E.2d 191 (N.C.App. 1986); Schulte v. Graff,481 S.W.2d 596 (Missouri Court of Appeals 1972); Crone v. City of ElCajon, 24 P.2d 846 (Cal Dist Ct of App. 4th Dist. 1933); Swan v.Riverside Bathing Co., 132 Kan. 61, 294 P. 904; Maher v. MadisonSquare Garden Corp., 242 N.Y. 506, 152 N.E. 405; Lyman v. Hall,117 Neb. 140, 219 N.W. 904. In the aforementioned cases verdicts in favor of the defendant were sustained because of a lack of causal connection between the defendant's alleged negligence and the drowning.
In Wu v. Fairfield, 204 Conn. 441, 528 A.2d 364 (1987), the plaintiff's decedent, who was fifteen years old went to Lake Mohegan, a fresh water lake, with her mother and two brothers for an afternoon of swimming. The decedent was last seen in waist high water fifteen to thirty minutes prior to her unwitnessed drowning. The Court found that the plaintiff did not present sufficient evidence that any breach of duty on the defendants' part was the proximate cause of the death.
Wu v. Fairfield and the other cases referred to above are not analogous to the present case because they deal only with the defendant's control over the swimming facility. In this case, the plaintiff has alleged that the defendants were negligent both in their control of the swimming facility and in their supervision and control over the children. That is, the plaintiff has alleged that the defendants were not only negligent toward Steven while he was in the water, but also in failing to adequately control and supervise the manner in which he had access to the water. There was evidence that the defendants allowed 45-65 children in the water at one time, failed to rope off a shallow area for non-swimmers and even failed to follow their own "buddy check" system.
There are a number of recent decisions from other jurisdictions in which the courts recognize a duty of those who assume custody of children to use care to protect them from harm. In Castro v. Chicago Park Dist., 178 Ill. App.3d 348,533 N.E.2d 504 (1988), the court held "[w]hen children are entrusted to the care of an organization, it must act with due care and caution for the safety of its participants." Id. 533 N.E.2d at 508. CT Page 10403
In Mayer on behalf of Mayer v. Tulane Medical Center,527 So.2d 329 (La.App. 1988), the court held that a non-parent who assumes control and supervision of a child has a duty to use reasonable care to protect the child from injury.
Two cases discuss the separate duties arising from the control of land and the custody and control of children. In Strode v.Becker, 206 Ill. App.3d 398, 564 N.E.2d 875 (1990), the court noted that the primary responsibility for injury to very young children must be placed on those entrusted with supervision of the children rather than on those who own the land where the injury occurs. InMcGarr v. Baltimore Area Council, Boy Scouts of America, Inc.,74 Md. App. 127, 536 A.2d 728, cert. denied, 313 Md. 7, 542 A.2d 844
(1988), the court held that a scoutmaster has a duty to take reasonable precautions for the safety of a scout during a camping trip apart from any duties of the landowner.
The questions of whether the defendants were negligent in allowing too many children in the water at one time, not segregating the non-swimmers, not adhering to their own "buddy check" system, etc., were for the jury. In reaching a conclusion of negligence the jury had to apply the applicable standard of care to the circumstances of the case. Such an application ordinarily involves a question of fact and will not be disturbed by the court unless a fair and reasonable person could not have reached the same conclusion. Southern New England Telephone v. Rosenberg, 159 Conn. 503,508, 271 A.2d 87 (1970); Smith v. Leuthner, 156 Conn. 422,424, 242 A.2d 728 (1968).
Similarly, the question of whether the defendants' alleged acts or omissions in the supervision of Steven's entry into the water were the proximate cause of his drowning were also for the jury. Hall v. Winfrey, 27 Conn. App. 154, 604 A.2d 1334 (1992),cert. denied, 222 Conn. 903, 606 A.2d 1329 (1992).
In Hall the plaintiff's decedent was the defendant's house guest. He was sleeping in a bedroom on the second floor of the house next to the stairway. The decedent got up in the middle of the night. The occupants of the house heard a thump and arose to find the decedent lying unconscious at the bottom of the stairway on the first floor. The plaintiff alleged that the fall was caused by the defendant's negligence in that she failed to leave a light on in the hall. No one witnessed the decedent's fall and, therefore, no witness could testify with certainty as to what caused him to fall. The defendant moved to set aside the verdict CT Page 10404 in favor of the plaintiff. The Appellate Court affirmed the trial's court's refusal to set aside the verdict and stated:
 "The elements of a cause of action for negligence are duty, breach, causation and damages. Doe v. Manheimer, 212 Conn. 748, 755, 563 A.2d 699 (1989)." Coste v. Riverside Motors, Inc., 24 Conn. App. 109, 112, 585 A.2d 1263 (1991). The defendant does not challenge that the jury could have found that the defendant owed a duty to the plaintiff's decedent with respect to light in the hallway, that the defendant breached that duty, and that she had notice of the defective lighting. The defendant argues only that the plaintiff failed to present sufficient evidence from which a jury could find that the defendant's negligence was the proximate cause of the decedent's fall . . .
. . . .
 "Circumstantial evidence . . . may provide a basis from which the causal sequence may be inferred. Thus it is every day experience that unlighted stairs create a danger that someone will fall. Such a condition `greatly multiplies the chances of accident, and is of a character naturally leading to its occurrence.' When a . . . person tumbles down the steps, it is a reasonable conclusion that it is more likely than not that the fall would not have occurred but for the bad lighting. . . . Such questions are peculiarly for the jury; and . . . are questions on which a court can seldom rule as a matter of law. And whether the defendant's negligence consists of the violation of some statutory safety regulation or the breach of a plain common law duty of care, the court can scarcely overlook the fact that the injury which has in fact occurred is precisely the sort of thing that proper care on the part of the defendant would be intended to prevent, and accordingly allow a certain liberality to the jury in drawing its conclusion." W. Prosser W. Keeton, Torts 41.
27 Conn. App. at 158-160.
In this case it would not have been unreasonable for the jury to infer a causal connection between the "supervisory" negligence of the defendants and the drowning. For example, the jury could CT Page 10405 have inferred that Steven would not have drowned if the defendants had allowed fewer children in the water at one time, or had confined his swimming to a shallow area of the lake. In addition, the jury could reasonably have concluded that Steven's drowning was of the same general nature as the foreseeable risk created by the defendants' negligence.
Other Grounds for Setting Aside the Verdict
The defendants have advanced a number of other grounds for setting aside the verdict as being contrary to the law. Some of those grounds were addressed during the course of the trial and will not be revisited here.
The defendants argue that the court should have submitted interrogatories to the jury. Those interrogatories contained the following with respect to each one of the thirteen defendants:
 Do you find that the defendant, [name of defendant], was negligent?
 If yes, what was the act or omission of negligence?
 Was the negligence the proximate cause of the drowning?
 If yes, specify the percentage of negligence as a proximate cause of the drowning.
The court has wide discretion when considering a party's request to submit interrogatories to the jury. Tomczuk v. Alvarez,184 Conn. 182, 439 A.2d 935 (1981); Falk v. Schuster, 171 Conn. 5,368 A.2d 40 (1976). Jury interrogatories are particularly appropriate where the complaint contains two or more counts or where two or more causes of action are incorporated in one count and the defendant wishes to protect himself from a general verdict.Booker v. Stern, 19 Conn. App. 322, 328, 563 A.2d (1989).
In this case there was only one count and one cause of action. Moreover, the verdict form, which was prepared by the defendants, elicited virtually all of the same information as did the proposed jury interrogatories. Asking the jurors to specify each defendant's particular acts or omissions which constituted negligence, presumably on a separate sheet of paper without any CT Page 10406 prescribed form, created the potential for unnecessary complication and confusion.
The defendants also claim that the verdict is contrary to the law as the jury did not specify the percentage of negligence that proximately caused the death in relation to one hundred percent.
The verdict form was in three parts. The first part stated: "The Jury assesses the negligence of the defendants as follows." This was followed by thirteen numbered lines which contained the name of each defendant and a space in which the jury was to state the percentage of negligence. The second part asked the jury to circle "yes" or "no" next to the name of each defendant to indicate if the negligence of that defendant was a proximate cause of the drowning. The final part contained one line for total economic damages and one for total noneconomic damages.
In the first part of the verdict form, the jury found that three defendants, Michael Shapiro, Richard Tribletts, and Jason Schuberth were not negligent. In the second part of the verdict form the jury indicated that all defendants to whom they had assigned a percentage of negligence were also the proximate cause of the drowning except Deborah Dennis and Kimberly Cotter. In other words, the jury did not allocate negligence based on 100 percent of the total negligence which was a proximate cause of the drowning as required under Connecticut General Statutes § 52-572h(f), but rather on 100 percent of all negligence.
Upon reviewing the verdict form before ordering the verdict accepted and recorded, the court excused the jury, discussed the discrepancy with counsel for all parties, and determined that the it was not necessary to request the jury to recalculate its percentages of negligence because such a recalculation could be done by the court. The jury was directed to enter a defendant's verdict in favor of the defendants Dennis and Cotter.
The court does not agree that the verdict form shows that the jury was confused or misled. The anomaly in the verdict form was caused by a faulty form rather than juror confusion. The form itself, which was approved by all parties, should, technically, have contained a fourth part in which the jury was asked to recalculate the percentages of negligence for only those defendants whose negligence had proximately caused the drowning. However, such addition to the verdict form would have created more confusion and was unnecessary. Nothing extrinsic to the verdict is required CT Page 10407 to express the jury's verdict in the proper form.
In Bradford v. Herzig, 33 Conn. App. 714, 638 A.2d 608 (1994) the Appellate Court held that a new trial was not necessary after a jury trial in which the jury had improperly allocated 25% responsibility to a non-party and 30% contributory negligence to the plaintiff. The defendant argued for a new trial on all issues. However, the Court noted that the jury's award of total damages in the verdict form was valid and attributed to the defendant 100% of the negligence that proximately caused the injury.
When the negligence of the defendants Downing, Gray, D'Aquila, Boothroyd, Pandolfo, Vance, Barone, and Skarb is considered to be 100% of the negligence which proximately caused the drowning, then the percentage of negligence of each defendant can be easily recalculated.[1] However, such a recalculation appears to be a matter of no practical significance because the defendant city of Middletown has agreed to indemnify all of the defendant-employees found liable.
The defendants have also claimed that the court made various errors in the charge, including the inclusion in the charge of an incorrect instruction concerning the standard of care with respect to children. The charge included the following language concerning the standard of care for adults dealing with children:
 Under Connecticut law, when an adult is dealing with a child, the adult may be obligated to use greater care than that used with an another adult because an adult is charged with knowledge of the propensities of a child. Conduct which may be careful in dealing with an adult may be careless when dealing with a child.
The foregoing language did not instruct the jury that the defendants had to use greater than reasonable care, as the defendants argue. The language regarding "greater care" originated in Lederer v. Connecticut Co., 95 Conn. 520, 524, 111 A. 785 (1920) and was used by the Connecticut Supreme Court again in Johnson v.Shattuck, 125 Conn. 60, 64, 3 A.2d 229 (1938). In Johnson the ten year old plaintiff was struck by the defendant's vehicle while she rode on the seat of a bicycle which was being pedaled by a twelve year old boy. In upholding a judgment in favor of the plaintiff the Court stated:
The law has regard for the immaturity of childhood, CT Page 10408 Rutkowski v. Connecticut Light Power Co., 100 Conn. 49, 53, 123 A. 25. In overtaking this bicycle the defendant was bound to bear in mind the characteristics of young children in respect to their nonappreciation of danger, and reasonable care on his part under the circumstances required greater care to avoid injury to them than if they were adults better able to help themselves. Lederer v. Connecticut Co., 95 Conn. 520, 524, 111 A. 785. (Emphasis added.)
In Scorpion v. American-Republican, Inc., 131 Conn. 42,37 A.2d 802 (1944), the Court stated that "[o]ne is required to use greater care where the presence of children is reasonably to be expected." 131 Conn. at 46.
Finally, the defendants claim that the verdict is excessive. The jury awarded $1,000,000 in economic damages and $2,500,000 in noneconomic damages. In determining whether an award is excessive, the basic question is whether it falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury has been influenced by partiality, prejudice, mistake or corruption. Apuzzo v. Seneco, 178 Conn. 230,423 A.2d 866 (1979).
At trial, Gary Crakes, an economist called by the plaintiff, offered an opinion as to the earning capacity of the plaintiff's decedent. The amount awarded for economic damages is consistent with that opinion. Therefore, the award appears to have been based on the evidence.
The defendants argue that the opinion advanced by Crakes was invalid because it was based only on the potential earnings of the "average" or "mean" five year old child and that such a basis is inherently speculative.
In Mather v. Griffin Hospital, 207 Conn. 125, 540 A.2d 666
(1988) the Court held that it was not unreasonable for a jury to have adopted a present value figure of $1,772,000 for the lost earning capacity of an infant. The Court in Mather recognized "that economics is an inexact science," and stated that it "hesitate[d] to adopt any particular method for computing the present value of lost compensation and future costs."207 Conn. at 147. CT Page 10409
Crakes was subjected to extensive cross examination. The jurors were instructed that they were free to reject his opinion, and that the opinions of experts could be disbelieved if they were based on speculative assumptions. The jury could have reasonably rejected Crakes' testimony, but it was not unreasonable for the jury to accept that testimony.
The defendants also claim that the amount of noneconomic damages awarded, $2,500,000, was excessive. In an action for wrongful death, a jury can properly award damages for the loss of life's enjoyment. Kiniry v. Danbury Hospital, 183 Conn. 448, 460,439 A.2d 408 (1981). Life's enjoyment defies quantification. It is truly priceless. Thus, it is extremely difficult for any court to set aside or remit a wrongful death, noneconomic damages verdict. This court certainly cannot say that the loss of Steven Alexander Hannah's life's enjoyment was not worth $2,500,000 or that the jury's award of that amount of noneconomic damages was excessive or exorbitant.
For the reasons set forth above, the court denies the Motion to Set Aside the Verdict and the Motion for Judgment Notwithstanding the Verdict. Judgment may enter in favor of the plaintiff.
By the Court,
Aurigemma, J.