[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Alicia Roach and her husband James Roach, seek monetary damages from the defendants, Ivan International Centers, Inc., Ivan International, Inc., and Edward Ivan, in three counts — negligence, breach of contract and negligent infliction of emotional distress. The plaintiffs' complaint first alleged that microcylinder devices were installed on Alicia Roach's hair by the defendants in a CT Page 10443-bd careless and negligent manner. However, the plaintiffs amended the negligence portion of the complaint on June 13, 2001, the last day of the trial. In the amended complaint the plaintiffs changed the negligence claim to allege the defendants' failure to warn and inform the Roaches of the dangers of itching, hair breakage and additional hair loss and to allege per se negligent acts of selling and installing the microcylinder devices. In essence, the plaintiffs now allege that the mycrocylinder devices and their installation were inherent dangers to a user such as Alicia Roach and the defendants were negligent in failing to warn of that danger.
The defendants deny culpability as to all of the counts of the amended complaint and assert by way of special defense that Alicia Roach was contributorily negligent The court heard testimony on June 8, June 11, and June 13, 2001. In addition, the court had the benefit of the parties' post-trial briefs.
The more credible evidence leads to the following factual conclusions. Alicia Roach is now seventy years of age. She holds a Ph.D in epidemiology from her native Poland, a masters degree in health sciences, and a certificate of training in clinical pathology. Her most recent employment was ten years with the State of Connecticut as an epidemiologist. She retired for health reasons October 1, 1999. Ivan International Centers, Inc. is a corporation with its principal place of business at 145 South Rodeo Drive, Beverly Hills, California. Ivan International, Inc. is a corporation with its principal place of business at 725 Fifth Avenue, Twenty-fifth Floor, New York, New York. Both defendant corporations (Ivan, Inc.) also do business under the trade names, Ivan, Ivan International Centers, Ivan International Capillaire, Ivan Centre International Capillaire, and the Ivan Treatment Center. Edward Ivan is an individual.
After seeing an advertisement in Harper's Bazaar magazine in the spring of 1996, Alicia Roach contacted Ivan, Inc. about the advertised microcylinder intervention (intervention). Alicia Roach was concerned about her thinning hair. She was attracted by the ad's offer to add natural hair to a client's own head without surgery. It was of the highest importance to Alicia Roach that the intervention involve no invasive surgery because she was an insulin-dependent diabetic. She consulted with her personal physician and her husband before entering into a written contract with Ivan, Inc. on June 24, 1996, in New York City.
On June 24, 1996, an Ivan, Inc. representative provided to the Roaches CT Page 10443-be a detailed explanation of the intervention procedure. The intervention involves use of skeins of natural donor hair. Each skein consists of a line of hairs attached to a thread about one inch in length. The Threads are then attached end-to-end in concentric circles over the client's head. The circles of thread are then anchored to each other by separate threads, which radiate from the center so that the underside of the resulting hairpiece resembles a spider's web. The client's natural hair is attached to the hairpiece by forty to sixty separate threads. Each of those threads is attached at one end to the web and at the other end to a tiny metal clamp around a few strands of natural hair at the scalp. Every few weeks, as the natural hair grows out from the scalp, the hairpiece loosens on the head. This places increased tension on the natural hair to which the microcylinders are attached and can cause hair breakage. A maintenance procedure (maintenance) is necessary wherein the clamps must be removed and replaced closer to the scalp. A maintenance tightens the hairpiece on the client's head. The Ivan, Inc. representative explained the periodic maintenance requirement to the Roaches. The representative did not warn of any potential adverse side effects, such as itching, discomfort or hair breakage. The Ivan, Inc. representative did say to the Roaches that the intervention would not prevent or retard additional hair loss.
The Roaches produced no credible evidence to show that itching, discomfort or hair breakage were side effects reasonably to be expected from the intervention procedure by Ivan, Inc. or by anyone else. They did not produce any witness to show the standard of care to be expected in the hair extension industry for a microcylinder attachment procedure, nor even for a surgical glue attachment procedure or some other similar procedure. The Roaches offered no expert testimony as to the standard of care in the hair extension industry regarding the issuance of warnings. "The general burden of proof in civil actions is on the plaintiff, who must prove all the essential allegations of the complaint." Gulycz v.Stop Shop Companies, Inc., 29 Conn. App. 519, 523, 615 A.2d 1087
(1992), cert. denied, 224 Conn. 923 (1992). In the absence of expert guidance, the court finds that the standard of care in the hair extension business did not require such a warning.
Alicia Roach and her husband paid $15,245 to Ivan, Inc. at the beginning of July, 1996, and a further $10,000 on August 18, 1996, for a total of $25,245. The intervention took place August 18 and 19, 1996, at the Beverly Hills offices of Ivan, Inc. After the intervention, Alicia Roach went to her own hairdresser's salon in Connecticut regularly once or twice a week for shampoos, coloring or highlighting, and styling. CT Page 10443-bf
Within a month after the intervention, Alicia Roach was bothered by the itching of her scalp. When she visited the New York offices of Ivan, Inc. on October 15, 1996, for a maintenance, she complained to the Ivan technician about itching. The technician told Alicia Roach that any itching would only be temporary and would pass. The Ivan technician removed the first group of microcylinders, cleaned the hairpiece, and reinstalled the hairpiece close to Alicia Roach's scalp with about forty new microcylinders. Simultaneously, the Ivan technician instructed Alicia Roach's friend, Debra Battista, as to the performance of the maintenance procedure. Thereafter, Alicia Roach made two or three telephone calls to Ivan, Inc. complaining about an itchy scalp. She also complained of the itching to her colleagues at work and lost sleep when she would wake up at night with her scalp itching.
When Alicia Roach went to her hairdresser early in December, 1996, the hairdresser, Nelson Jimmo, expressed concern to Alicia Roach about the amount of breakage of her natural hair. Jimmo recommended that Alicia Roach see a dermatologist. Alicia Roach went to dermatologist Dr. Gary L. Last on December 6, 1996, with a complaint of hair breakage and scalp dermatitis. However, Alicia Roach told Last on December 6, that itching was not really a problem at that time. Last noted that Alicia Roach's scalp appeared normal with no signs of irritation or disease. Last observed hair breakage, which he attributed either to the traction of the hairpiece or to Alicia Roach's past history of permanent waves and relaxers or to a combination of the two causes. Last felt that the hairpiece could be contributing to hair breakage; he recommended removal of the hairpiece.
Alicia Roach returned immediately to Jimmo for removal of the hairpiece. A few of the microcylinders were already broken off from their attachment to Alicia Roach's hair before Jimmo began his removal efforts. Jimmo snipped off the hair at the base of each remaining microcylinder. As a combined result of the snipping off of strands of hair at the underside of each microcylinder by Jimmo and the breaking off of some hairs from tension on the hair when the hairpiece became loose, the top of Alicia Roach's head had a significant balding spot upon Jimmo's removal of the hairpiece. Alicia Roach wore wigs for several months until her hair grew out. She was distressed and humiliated that she had spent large sums of money for the intervention with such dismal results. She resumed her weekly schedule of visits to her hairdresser for shampooing, tinting, and styling. The hair on the top of Alicia Roach's head is thinner now than it was five years ago when the intervention was done. This is to be expected due to the natural process of continued hair CT Page 10443-bg thinning, which had been occurring for some years prior to the intervention. Some thinning of Alicia Roach's hair might also be due to continued hair care processes since August, 1996, or to the residual effects of hair breakage in the fall of 1996. Alicia Roach failed to present any credible evidence of a causal connection between the Ivan intervention and lasting thinness of her hair. Her hair looked normal and well-maintained on all the trial dates.
Ivan, Inc. is in the business of installing exorbitantly-priced hairpieces on the heads of people with thinning hair. These hairpieces are the functional equivalent of wigs and might be expected to look and feel like wigs after attachment. Ivan, Inc. contracted to install a hairpiece on Alicia Roach in a nonsurgical procedure. They did so. "[A]s a general rule, there is implied in every contract for work or services a duty to perform it skillfully, carefully, diligently, and in a workmanlike manner." 17A Am.Jur.2d Contracts § 627 (1991). Ivan did the intervention skillfully, carefully, diligently, and in a workmanlike manner. There was no breach of the contract.
No evidence was adduced at trial by the Roaches to show standards of care in the wig installation or hair extension business. To the extent that the Roaches rely upon the ordinary knowledge of the trier of fact to find fault in Ivari, Inc.'s creation of the mycrocylinder devices, advertising of them, selling of them, contracting to install them or installation of them, this court has not found such fault. It was not established that Ivari, Inc. breached a standard of care by its failure to warn the Roaches that a wig could be uncomfortable or irritating. To the extent that the standard of care is not in the ordinary ken of the trier of fact, it is the burden of the plaintiffs to provide expert guidance to the trier of fact as to the standard of care in the industry. See Santopietro v. New Haven, 239 Conn. 207, 226, 682 A.2d 106
(1996). The Roaches have provided no expert witness in this case to establish a particular standard of care.
The Roaches have advanced the theory that res ipsa loquitur should be applied to this set of facts if they have failed to show any specific act of negligence by the defendants. The doctrine of res ipsa loquitur, when properly invoked, allows the trier of fact to infer negligence based on the circumstances of the incident even though no direct evidence of negligence has been introduced. See Giles v. New Haven, 228 Conn. 441,446, 636 A.2d 1335 (1994); Conlon v. G. Fox Co., 328 A.2d 708,110-111, 328 A.2d 708 (1973). It is incumbent upon the plaintiffs to show that the three elements of res ipsa loquitur have been met, namely that: (1) the situation, condition or apparatus causing the injury was such CT Page 10443-bh that no injury would have resulted but for negligence; (2) the party charged with neglect must have been in control of the scene of the apparatus, situation or condition at the time of the injury; and (3) the injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured. See Giles v. NewHaven, supra, 228 Conn. 446. The Roaches have failed to carry their burden of proof by a preponderence of the evidence as to any of the three elements of res ipsa loquitur.
The mycrocylinder intervention process was not shown in this trial to be an inherent danger to customers in general or to Alicia Roach in particular. While it is undisputed that Alicia Roach was eventually dissatisfied with her hairpiece, the credible evidence did not establish that the sale or installation of the hairpiece or the lack of warnings caused damage to Alicia Roach's scalp or hair. Speculation and conjecture would need to be applied to the facts as established by the Roaches' evidence in order to make a connection to any negligence by Ivari, Inc. or Ivan individually. Since the evidence did not establish negligence by Ivari, Inc. or Ivan, Alicia Roach's disappointment in the hairpiece, its removal, and her resulting emotional distress cannot be laid at Ivari, Inc.'s or Ivan's door.
Judgment shall enter on all counts of the amended complaint in favor of the defendants.
Winslow, J.